Present:  Carrico, C.J., Compton,[1] Lacy, Hassell, Keenan, Koontz, and Kinser, JJ.

ROY BERGER BASS

                                        OPINION BY
v.  Record No. 990894        JUSTICE LAWRENCE L. KOONTZ, JR.
                                         March 3, 2000
COMMONWEALTH OF VIRGINIA

            FROM THE COURT OF APPEALS OF VIRGINIA


    In this appeal, we consider whether a police officer's perception that a legal driving maneuver was made with the intent to evade a temporary traffic checkpoint is sufficient to give rise to a reasonable, articulable suspicion that the driver was involved in criminal wrongdoing, justifying an investigative stop of the driver's vehicle.

                        BACKGROUND

    On March 24, 1997, Chesterfield County police officer William Shane Wickham was assigned to participate along with other officers in a temporary traffic checkpoint.  The checkpoint was located on Cogbill Road between its intersections with Remuda and Tyrone Streets.  Tyrone Street intersects Cogbill Road at a distance of approximately 210 feet from the intersection of Jefferson Davis Highway and Cogbill Road. Remuda Street intersects Cogbill Road at a distance of

_____

    [1]Justice Compton participated in the hearing and decision of this case prior to the effective date of his retirement on February 2, 2000.

approximately 568 feet from Jefferson Davis Highway.  A gasoline station is located on the southwest corner of the intersection of Cogbill Road and Jefferson Davis Highway.  The traffic checkpoint was located approximately 500 feet from this intersection.[2]

Officer Wickham was assigned to a "chase vehicle" with instructions to stop any vehicle that attempted to evade the checkpoint.  From his position on Cogbill Road, nearer to Tyrone Street than Remuda Street, Officer Wickham observed a vehicle, subsequently determined to have been operated by Roy Berger Bass, turn left from the northbound lane of Jefferson Davis Highway onto Cogbill Road.  Officer Wickham further observed that after making this turn, the vehicle proceeded toward the traffic checkpoint, turned left into the parking lot of the gasoline station, traveled through the parking lot without stopping, and exited the parking lot into the southbound lane of Jefferson Davis Highway.

After observing these turns, Officer Wickham decided to stop the vehicle because it was the policy of his police department to stop any vehicle being driven in a manner so as to

_____

[2]The record does not pinpoint the exact distance between the checkpoint and this intersection.  However, the Commonwealth does not challenge Bass' assertions on appeal that the trial court determined that this distance was approximately 500 feet.

evade a traffic checkpoint. Officer Wickham testified that he believed that Bass was attempting to evade this particular traffic checkpoint because "[u]nlike any other vehicles that had pulled to the gas station [during the one hour that the checkpoint was in operation], Mr. Bass did not make any attempt to stop or check to see if the station was open, which, in fact, it was. He continued to travel through the gas station and travel southbound [on Jefferson Davis Highway]." Officer Wickham further testified that "to [his] knowledge, other than evading the checkpoint" Bass committed "no violation of any law" that Officer Wickham was able to observe prior to stopping Bass' vehicle.

On March 24, 1997, a warrant was issued charging Bass with a violation of Code § 18.2-266, driving a motor vehicle while intoxicated. Ultimately in the trial court, the Circuit Court of Chesterfield County, Bass filed a motion to suppress all evidence obtained as a result of the stop of his vehicle, asserting that Officer Wickham did not have adequate grounds upon which to stop and detain Bass. On October 22, 1997, prior to the commencement of trial, the motion to suppress was heard and denied. At the conclusion of the Commonwealth's case at trial, Bass' motion to strike the evidence was overruled. Bass then rested without presenting evidence and was found guilty.

Bass subsequently appealed his conviction to the Court of Appeals. In an unpublished opinion, Bass v. Commonwealth, Record No. 2535-97-2 (February 16, 1999), a divided panel of the Court of Appeals affirmed the judgment of the trial court. The majority found that the stop of Bass did not violate his Fourth Amendment right against unreasonable search and seizure. The majority reasoned that "[t]he manner in which Bass made two quick turns, cutting through the parking lot without stopping at the [gasoline] station, reasonably supported Officer Wickham's suspicion that Bass sought to evade the [checkpoint]. That suspicion legitimated the stop." The dissent concluded that Bass' case is controlled by the Court of Appeals' decision in Murphy v. Commonwealth, 9 Va. App. 139, 384 S.E.2d 125 (1989). There, the Court held that "a driver's action in making a legal turn within sight of a [traffic checkpoint] does not give a police officer a reasonable basis to suspect that the driver is involved in criminal wrong doing." Id. at 141, 384 S.E.2d at 126. On March 29, 1999, the Court of Appeals denied Bass' petition for rehearing. We awarded Bass this appeal.

### DISCUSSION

Although we have not previously addressed the specific issue presented by this appeal, the issue is rooted in and must be resolved by well-established principles that need not be recited in detail here. The undisputed facts establish that

Bass was subjected to an investigatory stop, a brief encounter between a citizen and a police officer, and it is ultimately to be determined whether that stop was consistent with Bass' right protected by the Fourth Amendment to the Constitution of the United States to be free from an unreasonable seizure. A police officer may constitutionally conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. Terry v. Ohio, 392 U.S. 1, 30 (1968). A reasonable suspicion is more than an "unparticularized suspicion or 'hunch.'" Id. at 27. Reasonable suspicion, while requiring less of a showing than probable cause, requires at least a minimal level of objective justification for making the stop. United States v. Sokolow, 490 U.S. 1, 7 (1989). Accordingly, the stop of an automobile and the resulting detention of the driver is unreasonable under the Fourth Amendment absent a reasonable, articulable suspicion that the driver is unlicensed or that the automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of the law. Delaware v. Prouse, 440 U.S. 648, 663 (1979). The court must consider the totality of the circumstances in determining whether a police officer had a particularized and objective basis for suspecting that a person stopped may be involved in criminal activity. United States v. Cortez, 449 U.S. 411, 417–18 (1981).

5

Our prior decisions, involving various factual circumstances, are in accord with these principles.  See, e.g., Ewell v. Commonwealth, 254 Va. 214, 491 S.E.2d 721 (1997); Zimmerman v. Commonwealth, 234 Va. 609, 363 S.E.2d 708 (1988); Leeth v. Commonwealth, 223 Va. 335, 288 S.E.2d 475 (1982).

These well-established standards are to be applied under equally well-established principles of appellate review.  We consider the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth, the prevailing party at trial.  Reid v. Commonwealth, 256 Va. 561, 564, 506 S.E.2d 787, 789 (1998).  We apply the same standard when, as here, we review the trial court's denial of the defendant's motion to suppress the evidence.  Ewell, 254 Va. at 217, 491 S.E.2d at 723.  However, determinations of reasonable suspicion in the context of a Fourth Amendment challenge involve questions of both law and fact and consequently are to be reviewed de novo on appeal.  In performing such a review we give deference to the factual determinations established in the record and independently determine whether under the established law those facts satisfy the constitutional standard.  Ornelas v. United States, 517 U.S. 690, 697-99 (1996).

Bass contends that the totality of the circumstances in this case, as established by the undisputed evidence, did not

6

give rise to the requisite reasonable suspicion that he may have been involved in some form of criminal or otherwise unlawful activity.  He argues that none of his driving maneuvers in proximity to the checkpoint was unlawful and that, indeed, the avoidance of a checkpoint is not unlawful.  Thus, he contends that under such circumstances neither Officer Wickham nor any objectively reasonable police officer would believe that the pursuit and stop were appropriate.

The Commonwealth responds with several different contentions.  Initially, the Commonwealth argues that Officer Wickham's observation of Bass' driving maneuvers supports the officer's reasonable conclusion that Bass "was evading the traffic checkpoint and, consequently, was violating the law." Although there is no specific statutory prohibition against the avoidance or evasion of a traffic checkpoint, the Commonwealth refers to Code § 46.2-817, which makes it unlawful for citizens to refuse to stop their vehicles when commanded to do so by the police, and contends that a traffic checkpoint is a command by the police for all those approaching to stop their vehicles. There is no merit to this contention.  Assuming, arguendo, that a checkpoint would constitute a police signal or command to stop, we are unwilling to construe this statute so that such command would extend over a distance of 500 feet and one street intersection beyond the checkpoint in question.

7

Next, the Commonwealth contends that even though Officer Wickham did not recognize that Bass was committing a traffic offense, the fact that Bass was guilty of such an offense nevertheless supports the objective reasonableness of the officer's actions.  The Commonwealth identifies Code § 46.2-833.1 as the statute that Bass violated.  Code § 46.2-833.1 provides that:

> It shall be unlawful for the driver of any motor vehicle to drive off the roadway and onto or across any public or private property in order to evade any stop sign, yield sign, traffic light, or other traffic control device.

The Commonwealth asserts that a traffic checkpoint falls within the category of "other traffic control device" in this statute.  We disagree.  A traffic checkpoint consists of police vehicles and police officers that are temporarily located and intended to discover unlawful activity.  To the extent that a checkpoint also "control[s]" traffic, it does so only for the previously stated purpose.  In contrast stop signs, yield signs, and traffic lights are intended for traffic safety and are generally not temporarily located.  They are obviously not intended to discover unlawful activity.  Because of this patent dissimilarity between the specific devices set forth in this statute and a traffic checkpoint, we conclude that the legislature did not intend to include traffic checkpoints within the scope of this statute.  In addition, under the doctrine

8

ejusdem generis, a traffic checkpoint does not fall under the statutory definition of "other traffic control device."  See, e.g., Graybeal v. Commonwealth, 228 Va. 736, 740, 324 S.E.2d 698, 700 (1985).  Accordingly, Bass' driving maneuvers did not constitute a violation of Code § 46.2-833.1, thus allowing the stop of his vehicle.

Finally, the Commonwealth contends that even if Bass' driving maneuvers did not constitute a traffic violation, they provided Officer Wickham with a reasonable, articulable suspicion that Bass was "either unlicensed or otherwise in violation of the law."  In support of this contention, the Commonwealth relies upon several cases decided by the Court of Appeals, giving particular emphasis to Thomas v. Commonwealth, 24 Va. App. 49, 480 S.E.2d 135 (1997)(en banc), and Stroud v. Commonwealth, 6 Va. App. 633, 370 S.E.2d 721 (1988).  In addition, the Commonwealth argues that there is a factual distinction between the present case and Murphy, the Court of Appeals decision relied upon by the dissenting judge in the present case.  We are not persuaded by this contention.  Thomas, Stroud, and Murphy, while employing the appropriate analysis for the determination of reasonable suspicion to justify an investigative stop, are all necessarily fact specific.  Thus, these cases do not control our independent review of the totality of the circumstances in the present case.  Indeed, if

9

that were not so, Murphy, which more closely resembles the factual circumstances here, would be more on point than Thomas and Stroud.

In the present case, Bass made a series of legal driving maneuvers the effect of which was to reverse the direction in which he was going. These maneuvers also resulted in his not passing through the traffic checkpoint that was approximately 500 feet away. The fact that Bass did not stop in the parking lot of the gasoline station is entirely consistent with a motive to accomplish a "U-turn." The reasons for which a driver may reverse direction other than to evade a traffic checkpoint are legion in number and are a matter of common knowledge and experience. Considering the totality of the circumstances and viewing the facts in the light most favorable to the Commonwealth, the most that the Commonwealth's evidence established in this case was a "hunch" that Bass chose to avoid the checkpoint. This was not sufficient to give Officer Wickham the requisite suspicion needed to seize Bass.[3]

---

[3]Contrary to the Commonwealth's assertion, the evidence in this case does not support a reasonable suspicion that Bass' maneuvers were conducted in such a manner as to constitute "headlong flight" from the police conducting the checkpoint. Accordingly, the recent decision of the United States Supreme Court in Illinois v. Wardlow, ___ U.S. ___, 120 S.Ct. 673 (2000), is not implicated here.

10

CONCLUSION

For these reasons, we hold that Bass was seized in violation of his Fourth Amendment rights. Consequently, the trial court erred in failing to suppress the evidence obtained as a result of that seizure, and the Court of Appeals erred in affirming the trial court's judgment.

Accordingly, we will reverse the judgment of the Court of Appeals and enter final judgment vacating Bass' conviction and dismissing the warrant.

Reversed and final judgment.