COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Benton and Kelsey
Argued by teleconference


COMMONWEALTH OF VIRGINIA
                                    MEMORANDUM OPINION* BY
v.    Record No. 1899-02-2    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                         JANUARY 10, 2003
TERRENCE LINWOOD LOCKETT


           FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                  Robert W. Duling, Judge Designate

           Jennifer R. Franklin, Assistant Attorney
           General (Jerry W. Kilgore, Attorney General,
           on brief), for appellant.

           Carolyn V. Grady (Epperly, Follis & Schork,
           PC, on brief), for appellee.


     The grand jury for the City of Richmond indicted Terrence

Linwood Lockett (defendant) for possession of heroin in violation

of Code § 18.2-250, possession of cocaine with intent to

distribute in violation of Code § 18.2-248, and possession of

cocaine with intent to distribute within 1000 feet of a school in

violation of Code § 18.2-255.2. Defendant filed a motion to

suppress evidence seized from him on the ground that the police

lacked a reasonable articulable suspicion to detain him. The

trial court granted the suppression motion, and the Commonwealth

───────────────

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

appeals.  For the following reasons, we reverse the trial court's suppression ruling.

                                    I.

On the evening of October 21, 2001, Officers Chuck Howell (Howell) and Robert Sprinkle (Sprinkle) of the Richmond City Police Department were on routine patrol as members of the drugs and weapons unit.  The officers arrived at the Creighton Court apartment complex at approximately 8:30 p.m. as part of an effort to surprise "anyone who was dealing drugs" in the neighborhood, which was "known for its numerous drug activities."  They parked at the southern end of the complex and were walking north when they noticed a group of individuals in a "cut" between two apartment buildings.  The property was marked by "No Trespassing" signs on each building.  Although the officers were familiar with the residents of the area, they did not recognize anyone in the group.  Based upon his training and experience, Howell suspected that a drug transaction "was going to occur or had occurred."  However, neither officer saw any drug activities or exchanges.

Howell and Sprinkle continued walking toward the group.  At that point, defendant "looked in [the officers'] direction" and immediately "took off running" in the opposite direction.  As he chased defendant, Howell saw him drop something.  Howell retrieved the discarded item, which he later discovered was a digital scale.

                                    -

Howell yelled at defendant to stop, and he "got on the ground." Sprinkle handcuffed defendant and did a "pat down" search for weapons. No weapons or drugs were found at that time. Howell did not tell defendant that he was under arrest, and Sprinkle told defendant "you're not under arrest, [you're] under investigative detention until we can figure out . . . what's going on."

Sprinkle took defendant to the officers' car and questioned him. Defendant said he did not live at Creighton Court and could not give a reason for being there that evening. Sprinkle arrested him for trespassing and in a search incident to the arrest found drugs and a cellular telephone.

The trial court ruled,

> I understand why the officers did what they did. But . . . [u]nder the evidence that has been presented to this Court, I do not find the facts to rise to a reasonable articulable suspicion that a crime has occurred or even that a crime is about to occur, and I grant the motion to suppress.

The Commonwealth appeals this ruling.

II.

When reviewing the ruling on a suppression motion, we consider the evidence most favorably to the prevailing party below, according deference to the decision of the trial court, with the burden to show reversible error resting upon the appellant, the Commonwealth in this instance. See Wallace v. Commonwealth, 32 Va. App. 497, 501, 528 S.E.2d 739, 740 (2000);

-

Miller v. Commonwealth, 16 Va. App. 977, 979, 434 S.E.2d 897, 899 (1993). "While we are bound to review de novo the ultimate questions of reasonable suspicion and probable cause, we 'review findings of historical fact only for clear error and give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Davis v. Commonwealth, 35 Va. App. 533, 538, 546 S.E.2d 252, 255 (2001) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)).

A police officer may constitutionally conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity may be afoot. See Terry v. Ohio, 392 U.S. 1, 30 (1968). "A reasonable suspicion is more than an unparticularized suspicion or hunch. Reasonable suspicion, while requiring less of a showing than probable cause, requires at least a minimal level of objective justification for making the stop." Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 923 (2000) (citing United States v. Sokolow, 490 U.S. 1 (1989)). "The court must consider the totality of the circumstances in determining whether a police officer had a particularized and objective basis for suspecting that a person stopped may be involved in criminal activity." Bass, 259 Va. at 475, 525 S.E.2d at 924 (citing United States v. Cortez, 449 U.S. 411, 417-18 (1981)).

This case is controlled by Illinois v. Wardlow, 528 U.S. 119 (2000). We note that at the suppression hearing in the

-

trial court, neither party referenced this decision.  In

Wardlow, the Supreme Court said,

> An individual's presence in an area of
> expected criminal activity, standing alone,
> is not enough to support a reasonable,
> particularized suspicion that the person is
> committing a crime.  But officers are not
> required to ignore the relevant
> characteristics of a location in determining
> whether the circumstances are sufficiently
> suspicious to warrant further investigation.

Wardlow, 528 U.S. at 124 (citing Brown v. Texas, 443 U.S. 47

(1979)).  Furthermore, unprovoked flight can provide a basis for

suspicion.  "Headlong flight—wherever it occurs—is the

consummate act of evasion:  It is not necessarily indicative of

wrongdoing, but it is certainly suggestive of such. . . .

Flight, by its very nature is not 'going about one's business';

in fact, it is just the opposite."  Id. at 124-25 (quoting

Florida v. Royer, 460 U.S. 491, 498 (1983)).

In the instant case, defendant was standing with a group of

individuals who were not apartment residents in an area marked

with no trespassing signs.  At trial, defendant conceded that

the neighborhood was a known drug area.  Although the officers

did not specifically see drugs or money change hands, their

training and experience led them to believe that a drug

transaction "was going to occur or had occurred."  These

circumstances and defendant's unexplained and unprovoked flight

mirror the facts in Wardlow.  "A determination that reasonable

suspicion exists . . . need not rule out the possibility of

-

innocent conduct."  United States v. Arvizu, 534 U.S. 266, 277 (2002).  To the contrary, police officers are permitted to detain individuals "to resolve the ambiguity."  Wardlow, 528 U.S. at 125.  Accordingly, the trial court's ruling is reversed, and the case is remanded to the trial court for trial.

Reversed and remanded.

Benton, J., dissenting.

The trial judge found that "the facts [failed] to rise to a reasonable articulable suspicion that a crime has occurred or even that a crime is about to occur," and he suppressed the evidence. Viewed in the light most favorable to Terrence Linwood Lockett, who prevailed at the suppression hearing, Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991), a significant aspect of the circumstances on which the police officer based his conclusion of criminal activity was proved not to be true.

The police officers seized Lockett, told Lockett he was being detained for trespassing, and initially arrested Lockett for trespassing. The police officer testified, however, that when he saw the men he suspected the men had engaged in a narcotics transaction or were about to engage in a narcotics transaction. The officer's testimony included the following:

> Q: Was there anything else besides the fact that they were standing there that supported your suspicion?
>
> A: Based on the demeanor -- Scratch that. Based on the way that they were standing-- and I have actually surveyed a lot of drug transactions--and like I have testified before, either a drug transaction had already occurred or was about to occur.
>
>     *     *     *     *     *     *     *
>
> Q: They were standing in an open area. Correct?

-

A:   Yes.

Q:   They weren't huddled over each over.
Right?

A:   Were they what now?

Q:   They weren't huddled over each other.
Right?   They weren't in a little circle.
Right?

A:   I don't remember how they were standing.

Q:   You have no idea how they were standing,
do you?

A:   No.

Q:   And it's a hunch that you thought, based
on your training and experience, that there
was something about to occur because of
things that occurred there in past.
Correct?

A:   Correct.

If we assume, as we must, that the trial judge resolved these facts against the Commonwealth, see McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (holding that "we are bound by the trial [judge's] findings of historical fact unless 'plainly wrong' or without evidence to support them"), then the evidence proved that the officer indeed acted upon a "hunch" when he determined that criminal activity had occurred or was about to occur.  Moreover, the trial judge was not required to believe, neither are we, that flight alone is a sufficient basis to make a Terry detention.  The Supreme Court has specifically noted that flight "is not necessarily

-

indicative of wrongdoing," even if "it is certainly suggestive of such." Illinois v. Wardlow, 528 U.S. 119, 124 (2000).

Whether the object the officer seized during the chase was discarded by Lockett or inadvertently dropped is also part of the totality of the circumstances. Again, we must view this evidence in the light most favorable to Lockett. The only evidence on this issue is the officer's testimony that Lockett "dropped" a "darkened colored object" during the chase. He did not testify that Lockett threw it or made a motion to discard it. The officer recovered the object, which he did not recognize, and did not examine it until after he seized Lockett. Because the trial judge did not rule that Lockett discarded the object and he ruled in Lockett's favor, we must view the evidence as establishing that the object merely dropped while Lockett ran. In addition, that object, which the officer did not even examine until Lockett "was in handcuffs," was not articulated to be part of the basis for the detention.

The evidence also proved that after the officers seized Lockett they put handcuffs on him for their safety. The officer told Lockett that he was being seized for an "investigative detention for trespassing." After the officers questioned Lockett, they "arrested [him] for trespassing." Only then, during a search incident to that arrest, did the officer find cocaine and arrest Lockett for possession of the cocaine the officer found during the search.

-

When we strip from the totality of the circumstances any reliance upon the officer's testimony that the assembly of men was indicative of a past or future drug transaction and view the facts as the trial judge did, i.e., that the officer's testimony proved no more than men "gather[ed] . . . to talk," the evidence proved the officers acted on a "hunch."  Moreover, the evidence proved that the officers told Lockett, when they detained him, that he was being investigated for trespassing.  They said nothing to him about narcotics before they searched him.  The totality of these circumstances supports the trial judge's ruling.  As the Supreme Court has held, "[w]hen . . . a stop is not based on objective criteria, the risk of arbitrary and abusive police practices exceeds tolerable limits."  Brown v. Texas, 443 U.S. 47, 52 (1979).

For these reasons, I would hold that the evidence failed to prove a reasonable articulable suspicion of criminal activity and, therefore, I would affirm the suppression order.