COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judges Benton and Clements
Argued at Alexandria, Virginia


JOHN EDWARD WILLIAMS

v.      Record No. 2451-02-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
CHIEF JUDGE JOHANNA L. FITZPATRICK
NOVEMBER 18, 2003


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
John E. Kloch, Judge

John E. Williams, pro se.

Stephen R. McCullough, Assistant Attorney General (Jerry W.
Kilgore, Attorney General, on brief), for appellee.


John Edward Williams (appellant) was convicted in a bench trial of driving while

intoxicated in violation of Code § 18.2-266.  On appeal, appellant contends that the trial court

erred in denying his motion to suppress and admitting into evidence a "Certificate of Analysis"

of his blood alcohol content issued by the Commonwealth's Forensic Science Division.

Specifically, appellant contends that the procedure did not substantially comply with Code

§§ 18.2-269.6 and 18.2-268.7.  Finding no error, we affirm.

I.  BACKGROUND

"On appeal from a denial of a suppression motion, we must review the evidence in the

light most favorable to the Commonwealth, giving it the benefit of any reasonable inferences."

Barkley v. Commonwealth, 39 Va. App. 682, 687, 576 S.E.2d 234, 236 (2003); see also Bass v.

Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 924 (2000).

_____
* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

So viewed, the evidence established that on January 19, 2002, at approximately 3:25 a.m., Trooper Ingham (Ingham) of the Virginia State Police was driving in an unmarked cruiser on I-395 when he saw a BMW approach at a high rate of speed. The car flashed its lights at the trooper. Ingham moved his car to the right in response, and entered the middle lane. The BMW accelerated and sped past him. Ingham followed the BMW, and paced its speed at 100 miles per hour. The BMW swerved in and out of the left traffic lane. Ingham followed the BMW as it exited and traveled east on Duke Street where he again clocked its speed at 90 miles per hour. The speed limit on Duke Street is 35 miles per hour.

After stopping the vehicle, Ingham approached, and identified appellant as the driver. He observed that appellant's eyes were bloodshot and glassy and he smelled of alcohol. Ingham asked appellant to perform a series of field sobriety tests, all of which he failed. During the tests, appellant laughed inappropriately, and mocked Ingham. At 3:48 a.m., approximately twenty minutes after the stop, Ingham arrested appellant for driving while intoxicated in violation of Code § 18.2-266.

Ingham transported appellant to the Alexandria jail, and advised him of the Virginia implied consent law. After learning that the Intoxilyzer 5000 machine was not available, Ingham took appellant to Alexandria Hospital where Nurse Cynthia Botts (Botts) drew appellant's blood for testing. Ingham testified that he was present throughout the procedure. He watched while appellant's blood was placed into two vials provided by the Division of Forensic Science (the Division). He then sealed the vials at the direction of Botts. Ingham testified that pre-numbered "Certificates of Blood Withdrawal" (CBW) were attached to the vials, with their perforations intact. Ingham initialed the certificates, placed the vials into two containers provided by the Division and sealed the containers to prevent tampering. Before sealing the containers, Ingham noted that there was nothing in the containers other than the sealed vials of blood and attached

certificates. Ingham gave appellant a form that described the procedure necessary for appellant to obtain an independent analysis of his blood which appellant chose to do. Ingham mailed one container and set of vials to the Medical College of Virginia, and one to the Division.

Nurse Botts testified at trial that she was on duty the night of appellant's arrest and that she withdrew blood from appellant. She stated that she used soap and water to cleanse appellant's arm, and used a sterile syringe from a sealed package to remove the blood sample. Botts extracted approximately 20 c.c.s of blood from appellant, and placed about 10 c.c.s of the blood into each of two vials. She testified that she watched as Ingham sealed the vials at her direction and completed the CBW.

Over appellant's objection, the Commonwealth introduced at trial a certificate of analysis produced by the Division. The certificate of analysis indicated that the blood contained in vial numbered 104145 had a blood alcohol content of 0.14% by weight by volume. The certificate of analysis stated that the "CBW was detached from the vial at the perforation." The CBW corresponding to vial numbered 104154 was attached to the certificate of analysis. The CBW contained appellant's name and address, Botts' name, the date and time appellant's blood was drawn, information identifying Ingham as the arresting officer, and Ingham's initials. The certificate of analysis further stated that the vial seal had not been broken or tampered with when received by the Division.

## II.  MOTION TO SUPPRESS

"In reviewing a trial court's denial of a motion to suppress, '[t]he burden is upon [the defendant] to show that th[e] ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc) (alterations in original) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)). "The admissibility of

evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Crest v. Commonwealth, 40 Va. App. 165, 170, 578 S.E.2d 88, 90 (2003) (citation omitted).

Appellant contends that the Commonwealth did not substantially comply with the statutes governing the transmission of blood samples, because the CBW was not attached to the vial upon receipt. We disagree.

Code § 18.2-268.6[1] provides in pertinent part:

> [T]he person who seals the vial shall complete the prenumbered certificate of blood withdrawal from attached to the vial by the Division. The completed withdrawal certificate for each vial shall show the name of the accused, the name of the person taking the blood sample, the date and time the blood sample was taken and information identifying the arresting or accompanying officer. The officer shall initial the completed certificate. The vials shall be divided between two containers provided by the Division, and the containers shall be sealed to prevent tampering with the vial. The arresting or accompanying officer shall take possession of the two containers as soon as the vials are placed in such containers and sealed, and shall promptly transport or mail one of the containers to the Division.

Pursuant to Code § 18.2-268.7, the certificate of analysis produced by the Division should include

> the name of the accused; the date, time and by whom the blood sample was received and examined; a statement that the seal on the vial had not been broken or otherwise tampered with; a statement that the container and the vial were provided by the Division and that the vial was one to which the completed withdrawal certificate was attached; and a statement of the sample's alcohol or drug or both alcohol and drug content. The Director shall remove the withdrawal certificate from the vial, attach it to the certificate of analysis and state in the certificate of analysis that it was so removed and attached.

In addition, pursuant to Code § 18.2-268.11,

> [t]he steps set forth in §§ 18.2-268.2 through 18.2-268.9 relating to taking, handling, identifying, and disposing of blood or breath samples are *procedural and not substantive. Substantial*

---

[1] Code §§ 18.2-268.6, 18.2-268.7 and 18.2-268.11 were amended in 2003.

> *compliance shall be sufficient.* Failure to comply with any steps or portions thereof or a variance in the results of the two blood tests shall not of itself be grounds for finding the defendant not guilty, but shall go to the weight of the evidence and shall be considered with all the evidence in the case; however, the defendant shall have the right to introduce evidence on his own behalf to show noncompliance with the aforesaid procedures or any part thereof, and that as a result his rights were prejudiced.

(Emphasis added.)

The only manner in which the certificate of analysis did not comply with Code § 18.2-268.7 was its statement that the CBW had become detached from the vial itself. However, the evidence proved that appellant's blood was drawn, placed in the vials, identified by accompanying CBW's, placed in sealed containers, and mailed to the appropriate laboratories in accordance with Virginia law. Ingham testified that when he sealed the containers, there was nothing in them except the vials and their accompanying CBW's. The CBW attached to the certificate of analysis contained appellant's name and the same vial number as that on the certificate itself.

Appellant's reliance on Williams v. Commonwealth, 10 Va. App. 636, 394 S.E.2d 728 (1990), is misplaced. In Williams, the defendant moved to suppress the certificate of analysis because it indicated that the container holding the vials had not been sealed. Stating that "The purpose of the sealed container requirement is to ensure that the vial received by the laboratory is the same vial containing the defendant's blood which was placed in the container by the person taking the blood sample . . .," we held that the trial court erred in admitting the certificate into evidence at trial. Id. at 638, 394 S.E.2d at 729. In the instant case, the evidence established that the container was and remained sealed after the vials were placed inside. Although it is unclear how the CBW became detached from the vial, whether in transit or upon arrival at the Division, there is no evidence that Ingham and Botts had failed to comply with Code § 18.2-268.6 after taking the sample.

These facts and circumstances establish substantial compliance with the procedures governing the taking and handling of appellant's blood. Therefore, the trial court did not err in admitting the certificate of analysis.

Appellant's additional argument that the charge against him should be dismissed presumes a finding that the certificate of analysis was inadmissible. Having concluded to the contrary above, we need not consider this question.

Finding no error, we affirm the judgment of the trial court.[2]

Affirmed.

---

[2] Rule 5A:18 precludes appellant's other arguments because these issues were not raised at trial:

> There was no other evidence about which vial was examined by Ms. Woods; for which vial the results of the blood alcohol content were reported in the Certificate of Analysis; how the container was received at the Forensic Division; who had access to it; what events affected the vial and CBW before they were examined by T. Woods; how much time elapsed between the receipt of the container and the time when T. Woods examined and tested the sample; and whether this sample or *countless other blood samples of other accused persons* in the Division at the same time could have been associated with the CBW identifying the Defendant.

Benton, J., dissenting.

Pertinent to the issue in this case, Code § 18.2-268.7 requires the Director of the Division of Forensic Science to include on the certificate of analysis "a statement . . . that the vial [containing blood] was one to which the completed [blood] withdrawal certificate was attached." Code § 18.2-268.7 also provides that "[t]he Director shall remove the [blood] withdrawal certificate from the vial . . . and state in the certificate of analysis that it was so removed . . . ." Code § 18.2-268.7 further provides that "[u]pon proper identification of the certificate of [blood] withdrawal, the certificate of analysis, with the [blood] withdrawal certificate attached, shall, when attested by the Director, be admissible in any court . . . as evidence of the facts therein stated and of the results of such analysis."

The evidence establishes that the employee who executed the certificate of analysis on behalf of the Director received and examined "Vial No. 104145 containing blood." The employee noted on the certificate of analysis that when she received the vial, the withdrawal certificate "was detached from the vial at the perforation." The employee also deleted from the preprinted certificate of analysis, the words, "The attached Certificate of Blood Withdrawal was affixed to the vial," and she initialed the deletion. Although she attached the certificate of blood withdrawal to the certificate of analysis, she indicated by a further deletion that she had not "removed [the certificate of blood withdrawal] from the vial." She also initialed this deletion.

No evidence establishes how and under what circumstances the certificate of blood withdrawal was separated from the vial of blood. Indeed, no evidence established that the certificate of blood withdrawal was received in the laboratory in the same container as the vial of blood or at the same time the vial of blood was received. The statutory requirements that each vial of blood have attached to it a "certificate of blood withdrawal," see Code §§ 18.2-268.6 and 18.2-268.7, provide a method of assuring the integrity of the association of the blood sample,

- 7 -

which has been taken and sent in transit, with a blood sample which is later received in the laboratory and tested. These statutory requirements clearly are designed to thwart tampering and to alert the laboratory and the Commonwealth to the need to establish the integrity of the blood sample if the vial and certificate of blood withdrawal arrive at the laboratory in a manner not statutorily sanctioned. By statute, the certificate of analysis is only admissible in court after the Director or his designated employee makes "proper identification of the certificate of blood withdrawal." Code § 18.2-268.7. These statutory requirements presuppose that the certificate of blood withdrawal is attached to the vial of blood when received in the laboratory.

The certificate of analysis indicates that the vial of blood was received in the laboratory for testing seventeen days after it was mailed. The vial of blood was examined three days after it was received in the laboratory. The Commonwealth's own evidence established that *something* happened to separate the vial from the certificate of blood withdrawal before the employee in the laboratory received the vial of blood. Where, as here, the vial and certificate of blood withdrawal have "passed through several hands the evidence must not leave it to conjecture as to who had it and what was done with it between the taking and the analysis." Rogers v. Commonwealth, 197 Va. 527, 531, 90 S.E.2d 257, 260 (1955). The Commonwealth has failed to establish when, during those twenty days, and under what circumstances the certificate of blood withdrawal was detached and came to be in the possession of the examiner. Thus, the record does not establish that this statutory "safeguard has . . . been achieved in actuality or in substance." Artis v. City of Suffolk, 19 Va. App. 168, 171, 450 S.E.2d 165, 167 (1994). In failing to do so, the Commonwealth has not substantially complied with the statutory requirements.

For these reasons, I would hold that the trial judge erred in admitting the certificate of analysis. Thus, I would reverse the conviction and remand for a new trial.