COURT OF APPEALS OF VIRGINIA


Present:   Judges Kelsey, Haley and Beales
Argued at Chesapeake, Virginia


SHAUN ANTHONY WOODHOUSE

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1643-06-1                      JUDGE RANDOLPH A. BEALES
                                                    JANUARY 8, 2008

COMMONWEALTH OF VIRGINIA



            FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
                        Rodham T. Delk, Jr., Judge

        Stephanie S. Miller, Assistant Public Defender (Office of the Public
        Defender, on briefs), for appellant.

        Rosemary V. Bourne, Assistant Attorney General (Robert F.
        McDonnell, Attorney General, on brief), for appellee.


        Following a bench trial, Shaun Anthony Woodhouse (appellant) was convicted of

possession of a firearm by a convicted felon in violation of Code § 18.2-308.2.  He argues the

trial court erred in denying his motion to suppress the introduction of the firearm into evidence.

For the reasons that follow, we affirm his conviction.

                                        BACKGROUND

        "'On appeal from a denial of a suppression motion, we must review the evidence in the

light most favorable to the Commonwealth, giving it the benefit of any reasonable inferences.'"

Kyer v. Commonwealth, 45 Va. App. 473, 477, 612 S.E.2d 213, 215 (2005) (en banc) (quoting

Slayton v. Commonwealth, 41 Va. App. 101, 103, 582 S.E.2d 448, 449 (2003)).

        At approximately midnight on November 17, 2005, Officer Huddleston and Officer

Wellford, both of the Suffolk Police Department, were on patrol at the corner of Jefferson and

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Walnut in the city of Suffolk, which Huddleston characterized as a high crime area. While at that location, the officers heard a gunshot. As the officers drove "towards the sound of the gunshot," they received a dispatch for shots fired in a nearby area. On the way to that area, which was only a couple of streets away, the officers stopped to ask an individual Huddleston knew if he had heard the gunshot. That individual informed the officers that two people were arguing on nearby Colley Street. Huddleston recalled, "Dispatch also advised that there was a male and female in the street arguing."

As Huddleston and Wellford pulled onto Colley Street, they noticed appellant standing beside the driver's side door of a stationary vehicle talking to that vehicle's driver. The officers observed appellant kick the driver's side door. Appellant, as soon as he saw the officers approaching, started to walk away. Huddleston parked his police vehicle behind that other vehicle and got out.

Huddleston instructed appellant to stop, put his hands in the air, and walk back towards the officers. Instead of following Huddleston's command, appellant walked around the other vehicle that he had just kicked and got into the front passenger side seat. Huddleston approached that vehicle from the driver's side and observed appellant "making a furtive movement towards the front underside of the seat he was sitting in." Huddleston told appellant to remain in the vehicle with his hands placed on the dashboard.

At that point, Huddleston asked the driver if she was okay and received her consent to search the vehicle. While Huddleston spoke to the driver, he noticed that Officer Wellford "was having some difficulty with [appellant]. [Appellant] was trying to get out of the vehicle and [Wellford] was telling him to s[t]ay in the vehicle." Appellant refused to follow Wellford's instruction and stepped out of the vehicle. At that point, Huddleston ordered appellant to the rear of the vehicle and "patted him down for weapons."

Huddleston, thereafter, commenced his search of the vehicle. As Huddleston "got about a quarter of the way in[side] the [driver's side] door," he saw a gun lying beneath the front passenger side seat. Huddleston got back out of the vehicle and made eye contact with appellant, who was still standing at the rear of the vehicle. Appellant then "took off running." Both officers pursued, and Huddleston finally caught up with and detained appellant.

Appellant was arrested and charged with possession of a firearm by a convicted felon. Appellant sought to suppress the firearm, claiming that police did not have reasonable suspicion to stop him and that his illegal detention led directly to the seizure of the firearm. The trial court denied the motion, stating "the fact is in the end this defendant didn't have anything to do with seizure of the firearm because the owner of the vehicle gave the consent." The trial court subsequently convicted appellant of possession of a firearm by a convicted felon and sentenced him to five years in prison.

ANALYSIS

Initially we note,

> "Ultimate questions of reasonable suspicion and probable cause to make a warrantless search" involve questions of both law and fact and are reviewed *de novo* on appeal. In performing such analysis, we are bound by the trial court's findings of historical fact unless "plainly wrong" or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers.

McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (*en banc*) (quoting Ornelas v. United States, 517 U.S. 690, 691 (1996)).

"A police officer may constitutionally conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 924 (2000). In fact, "A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more

- 3 -

information, may be most reasonable in light of the facts known to the officer at the time."

Adams v. Williams, 407 U.S. 143, 146 (1972). "The court must consider the totality of the circumstances in determining whether a police officer had a particularized and objective basis for suspecting that a person stopped may be involved in criminal activity." Bass, 259 Va. at 475, 525 S.E.2d at 924.

Here, appellant contends that the seizure of the firearm flowed from an illegal stop, which occurred when Officer Huddleston commanded him to stop and walk back towards the arriving officers. As appellant argues on brief, "Clearly this action constituted a stop because the appellant's freedom to walk away was restricted by government action." However, appellant did not submit to Huddleston's command and, therefore, was not seized at this point. See Washington v. Commonwealth, 29 Va. App. 5, 10-11, 509 S.E.2d 512, 514 (1999) (*en banc*) ("A seizure occurs when by physical force or show of authority *and submission thereto*, an individual's freedom of movement is restrained and the person is not free to leave." (emphasis added)). Appellant instead walked around to the passenger side of the parked vehicle, sat down inside, and made furtive gestures underneath the passenger side seat. In fact, appellant continued to disregard the officers' further instruction to remain in the vehicle with his hands placed on the dashboard and, therefore, probably did not actually submit to authority until he moved to the rear of the vehicle where Huddleston patted him down for weapons.

Even if appellant, however, was seized at the earlier point where the officer instructed him to stop and walk back toward him, the record in this case contains ample evidence to support a reasonable suspicion of criminal activity at that point. Prior to encountering appellant, the officers heard a gunshot while in the immediate vicinity, which Huddleston characterized as a high crime area. After being dispatched to investigate the gunshot, Huddleston was informed both by an individual walking in the area, whom he knew, and by the dispatcher "that there was

- 4 -

[sic] a male and female in the street arguing." Upon their arrival at the scene, the officers saw appellant kick a vehicle while talking to that vehicle's driver. The officers clearly had reasonable articulable suspicion under the totality of the circumstances to detain appellant at this point. See Hatcher v. Commonwealth, 14 Va. App. 487, 490, 419 S.E.2d 256, 258 (1992) ("A general suspicion of some criminal activity is enough, as long as the officer can, based on the circumstances before him at the time, articulate a reasonable basis for his suspicion.").

However, reasonable articulable suspicion only increased after the officer instructed appellant to stop and walk in his direction. In direct contravention to this instruction, appellant walked to the passenger side of the vehicle, sat down inside that vehicle, and made furtive gestures underneath the passenger seat. These facts certainly supplied the officers with even greater reasonable articulable suspicion that criminal activity was afoot, thereby authorizing them to detain appellant and investigate further.[1]

Moreover, appellant did not challenge in the trial court the driver's consent to search her vehicle, and we will not entertain such a challenge for the first time on appeal. See Rule 5A:18. While appellant contends he was improperly detained and the discovery of the firearm flowed from that illegal stop of him, the driver's consent (i.e., a third party's consent) actually provided an independent basis for the search of her vehicle and the subsequent seizure of the firearm from under the seat where appellant had just been sitting and making furtive gestures. See generally United States v. Matlock, 415 U.S. 164, 171 (1974) ("[W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who

---

[1] On brief, appellant argues that the officers did not have a proper basis to detain him because "[t]he telephone tipster in the instant case did not identify a suspect nor provide the same location Officer Huddleston found the appellant." That argument ignores the fact that the officers actually heard the gunshot and were subsequently dispatched to the area to investigate. As the trial court correctly found, "This is not an anonymous call to the police out of the blue."

- 5 -

possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected."). Thus, as the trial judge correctly stated in denying the motion to suppress, "[T]he fact is in the end this defendant didn't have anything to do with seizure of the firearm because the owner of the vehicle gave the consent."

CONCLUSION

For the foregoing reasons, we hold the trial court did not err in denying appellant's motion to suppress, and, accordingly, we affirm his conviction.

Affirmed.