COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Frank and Kelsey
Argued at Richmond, Virginia


JOHN CLIFFORD HUTT, III

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1454-11-2                      JUDGE ROBERT P. FRANK
                                                    JULY 10, 2012
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF WESTMORELAND COUNTY
Joseph J. Ellis, Judge

Nicholas Smith (Jan Smith Law Offices, on brief), for appellant.

Robert H. Anderson, III, Senior Assistant Attorney General
(Kenneth T. Cuccinelli, II, Attorney General, on brief), for
appellee.


John Clifford Hutt, III, appellant, was convicted, in a bench trial, of two counts of grand

larceny in violation of Code § 18.2-95, two counts of forgery in violation of Code § 18.2-172, and

two counts of uttering in violation of Code § 18.2-172.  On appeal, he contends the trial court erred

in admitting into evidence two affidavits signed by John Clifford Hutt, the victim.  He argues that

without appellant having an opportunity to cross-examine, his Sixth Amendment right to

confrontation was violated.  For the reasons stated, we affirm the judgment of the trial court.

BACKGROUND

John Goode worked for an elderly man named John Clifford Hutt (Hutt), appellant's

grandfather.  Goode's responsibilities included assisting Hutt with his finances and helping Hutt

maintain his checkbook.  On June 14, 2010, Goode noticed several checks were missing from the

checkbook.  The checkbook was located on the dining room table, accessible to anyone in the

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

house, including appellant who on occasion worked in Hutt's residence. Upon noticing the missing checks, Goode drove Hutt to the bank.

At the bank, Hutt signed two affidavits reciting, *inter alia*, that the two checks in question, number 5314 in the amount of $826 and number 5320 in the amount of $850, were not written or endorsed by him or with his knowledge, consent or authority, that he denied liability for the checks, and that he had not "received payment or benefit of the checks." The affidavits further stated the affidavit is made for the bank "to be used by and be used as it may deem proper for the protection of its interest."

Patricia Kuykendall, a bank vice president and security officer, testified regarding the bank's procedure in the event customers informed them their checks had been forged. The customer would sign an affidavit that had been prepared by the bank "in-house" which it kept on file at the bank. Additionally, the affidavits, which were notarized by notaries at the bank, were filed with the Westmoreland Police Department. Kuykendall was present when Hutt signed the two affidavits.

Kuykendall further testified that the affidavits were kept at the bank and monitored by her in the regular course of business "for bookkeeping records for . . . any restitution at the end of whatever happens." The bank relied on those affidavits. If a customer wanted to have his money reimbursed by the bank, he was required to complete an affidavit. No one at the bank would tell an affiant that he or she must pursue the matter criminally. Likewise, Patricia King, an assistant vice president at the bank who had notarized the two affidavits completed by Hutt, testified that neither she nor anyone in her presence had mentioned any future criminal or civil prosecutions to Hutt.

Gretchen Gable, a teller at the bank, cashed two checks for appellant. After 2:00 p.m. on June 7, 2010 appellant cashed check number 5314 in the amount of $826 that purportedly had been made out to him by his grandfather. Appellant returned to the bank on June 14, 2010, and in similar

fashion cashed a second check, number 5320 in the amount of $850, purportedly made out to him by his grandfather.

At trial, the Commonwealth introduced evidence regarding two telephone calls appellant made prior to trial while confined at the Rappahannock Regional Jail. The first phone call between appellant and his grandfather occurred on November 30, 2010. During that conversation, after appellant said that he was "not trying to hurt" his grandfather, the elder Hutt responded "if you take my money and my property and go off with it, that – that don't help any." At that point, there was a five-second pause without appellant responding. The conversation then ended.

The second call occurred on December 4, 2010 between appellant and his father, a lawyer. While discussing money laundering, appellant stated, "I took money and used it to buy drugs."

Appellant objected to the admissibility of the two affidavits, arguing that since the affidavits were testimonial and he could not cross-examine Hutt, the affiant, his Sixth Amendment right to confrontation was violated.

In overruling appellant's objection, the trial court found the affidavits to be non-testimonial. "The documents here weren't made for the purpose of a prosecution. They were simply made to get the bank to give [Hutt] his money back . . . ." The trial court further found the affidavits were business records of the bank prepared primarily for the systematic conduct of the bank's business.

This appeal follows.

ANALYSIS

Appellant contends the affidavits were improperly admitted into evidence because they are testimonial and thus violated his Sixth Amendment right to confrontation. The Commonwealth maintains the affidavits are non-testimonial.

On appeal, constitutional arguments present questions of law that this Court reviews *de novo*. Shivaee v. Commonwealth, 270 Va. 112, 119, 613 S.E.2d 570, 574 (2005). Additional

well-established principles of appellate review guide this Court's analysis. "We consider the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth, the prevailing party at trial." Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 924 (2000) (citing Reid v. Commonwealth, 256 Va. 561, 564, 506 S.E.2d 787, 789 (1998)).

> The Confrontation Clause of the Sixth Amendment to the U.S. Constitution, made applicable to the States by the Fourteenth Amendment, Pointer v. Texas, 380 U.S. 400, 403 (1965), provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In Crawford v. Washington, [541 U.S. 36 (2004),] the United States Supreme Court held that the Confrontation Clause does not allow the admission of testimonial statements of a witness who did not appear at trial "unless he was unavailable to testify and the defendant had had a prior opportunity for cross-examination." 541 U.S. at 53-54. The Court stated, "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." Id. at 68-69.

Crawford v. Commonwealth, 281 Va. 84, 97, 704 S.E.2d 107, 115 (2011).

The Supreme Court of the United States, in Crawford and Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527 (2009), made it clear that the admission of documentary evidence in lieu of the live testimony of witnesses violates a criminal defendant's confrontation rights under the Sixth Amendment, if the documents are testimonial in nature, because such documents cannot be tested "in the crucible of cross-examination." Crawford, 541 U.S. at 61. On the other hand, the admission of documentary evidence that is not testimonial does not offend the Confrontation Clause. Business and public records, for example, are not testimonial because they are created for the administration of affairs generally "and not for the purpose of establishing or proving some fact at trial." Melendez-Diaz, 129 S. Ct. at 2540.

If the statement is found to be testimonial, "the Sixth Amendment demands what the common law required: [in-court confrontation or] unavailability and a prior opportunity for

cross-examination." Crawford, 541 U.S. at 68. Significantly, the Court declared that the "core class of 'testimonial' statements" include:

> *ex parte* in-court testimony or its functional equivalent — that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements . . . contained in formalized testimonial materials such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

Id. at 51-52.

It is a well-established principle of appellate review that this Court should not decide constitutional questions "'if the record permits final disposition of a cause on non-constitutional grounds.'" Luginbyhl v. Commonwealth, 48 Va. App. 58, 64, 628 S.E.2d 74, 77 (2006) (*en banc*) (quoting Keller v. Denny, 232 Va. 512, 516, 352 S.E.2d 327, 329 (1987)). Similarly, we should decide cases "'on the best and narrowest ground available.'" Id. (quoting Air Courier Conference v. Am. Postal Workers Union, 498 U.S. 517, 531 (1991) (Stevens, J., concurring)).

For the purpose of this appeal, we need not decide whether admission of the two affidavits against appellant violated his Sixth Amendment right of confrontation. Because of other evidence before the trial court, we find that error in admitting the affidavits, if any, was harmless.

The United States Supreme Court has held that error involving the Sixth Amendment's Confrontation Clause is subject to constitutional harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986). The Court explained that "[t]he correct inquiry is whether, assuming that the damaging potential of the [error] were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." Id. Accordingly,

> [w]hether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the [tainted evidence] in the prosecution's case, whether [that evidence] was cumulative, the

presence or absence of evidence corroborating or contradicting the [tainted evidence] on material points . . . and, of course, the overall strength of the prosecution's case.

Id.

"'We decide whether the erroneous admission of evidence was sufficiently prejudicial to require reversal on the basis of our own reading of the record and on what seems to us to have been the probable impact on the fact finder.'" Corado v. Commonwealth, 47 Va. App. 315, 323, 623 S.E.2d 452, 456 (2005) (quoting Green v. Commonwealth, 32 Va. App. 438, 446, 528 S.E.2d 187, 191 (2000)). "'An error is harmless only when it plainly appears from the record and the evidence that the error has not affected the verdict. Whether an error does not affect the verdict must be determined "without usurping the jury's fact finding function."'" Id. (quoting Hooker v. Commonwealth, 14 Va. App. 454, 457, 418 S.E.2d 343, 345 (1992)) (other citation omitted).

The affidavits in question averred that Hutt neither signed nor endorsed the two checks, nor did he give anyone the authority to do so. This evidence was merely cumulative of Goode's testimony that "[Hutt] signed the affidavits saying it wasn't his signature on the checks." From the two telephone conversations, appellant admitted taking the money to buy drugs. Further, when Hutt accused appellant of taking his money, appellant remained silent. He did not deny the theft, constituting an implied admission. The Supreme Court of Virginia has held:

> "When a statement tending to incriminate one accused of committing a crime is made in his presence and hearing and such statement is not denied, contradicted, or objected to by him, both the statement and the fact of his failure to deny are admissible in a criminal prosecution against him, as evidence of his acquiescence in its truth. The basis of such rule is that the natural reaction of one accused of the commission of a crime or of implication therein is to deny the accusation if it is unjust or unfounded."

Dowden v. Commonwealth, 260 Va. 459, 469, 536 S.E.2d 437, 442 (2000) (quoting Owens v. Commonwealth, 186 Va. 689, 698, 43 S.E.2d 895, 899 (1947)).

- 6 -

Without the affidavits, other testimony shows that appellant had access to Hutt's checkbook, that he cashed the two checks at the bank, that Hutt signed affidavits stating he did not sign the checks, appellant's failure to respond to Hutt's accusation of theft, and appellant's own admission that he took the money to buy drugs. Further, Goode testified without objection that he and Mr. Hutt "found out that there were a couple of checks stolen and the defendant had cashed them at [the] bank." Upon considering the factors outlined in Van Arsdall, 475 U.S. at 684, including "the importance of the [tainted evidence] in the prosecution's case, and whether [that evidence] was cumulative . . . [and] the overall strength of the prosecution's case," we hold that the admission of the affidavits constitutes harmless error beyond a reasonable doubt in relation to appellant's convictions. See Crawford, 281 Va. at 102, 704 S.E.2d at 118.

## CONCLUSION

We conclude that error, if any, in admitting the affidavits was harmless error beyond a reasonable doubt as "it plainly appears from the record" that such error "has not affected the verdict." Corado, 47 Va. App. at 323, 623 S.E.2d at 456. Therefore, the judgment of the trial court is affirmed.

Affirmed.