UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, AtLee and Senior Judge Frank
Argued at Norfolk, Virginia


INDIA FELICIA VALENTINE

v.        Record No. 1034-16-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE RICHARD Y. ATLEE, JR.
MARCH 21, 2017

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Michelle J. Atkins, Judge

G. Anthony Yancey (Law Offices of G. Anthony Yancey, on
brief), for appellant.

Aaron J. Campbell, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


A jury in the Circuit Court of the City of Norfolk convicted appellant India Felicia

Valentine of felony murder[1] and abuse or neglect of an incapacitated adult.  She received a total

active sentence of forty-two years in prison.  On appeal, she argues that the jury erred in finding

the evidence sufficient for either conviction.  For the following reasons, we affirm.

I. BACKGROUND

For approximately five years, appellant lived on-site in an apartment building in order to

provide care for 77-year-old Gertha Curry, with whom she shared an apartment.  She also served

as property manager and was responsible for cooking meals for the other eight building

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant does not raise a distinct challenge to her felony murder conviction; she argues
that the Commonwealth "failed to prove beyond a reasonable doubt that the underlying offense
of abuse or neglect of an incapacitated adult occurred."  Accordingly, we do not need to
independently discuss the law of felony murder, as both convictions turn on evidence of neglect.

residents. Her apartment contained the only stove in the building. She lived rent-free in exchange for her caregiving role.

One weekend in September 2013, appellant traveled to Washington, D.C. to visit her daughter, leaving her sister and niece in charge of her caregiving duties. When appellant's sister arrived at the apartment to cook on Sunday, she discovered Curry had died. An autopsy revealed that the cause of death was "inanition[2] and dehydration due to nutritional neglect with contributing causes medical neglect, combined antihistamine and dextromethorphan intoxication, subacute blunt force head trauma, and degenerative brain disease." Curry measured four foot eight and weighed only forty-five pounds at the time of her death. The coroner testified that this was the lowest body mass index she had ever seen, and "[i]t seemed as if there were virtually no muscle or fat left on her." This weight loss would have occurred over "weeks, probably months." Curry's eyeballs had collapsed from dehydration. Her body displayed numerous other indications of starvation and chronic dehydration. The coroner concluded that Curry's cause of death was homicide, given that Curry was "dependent on a caretaker for her activities of daily living, provision of food, water, medical care, and administration of medications."

Appellant had extensive experience working in nursing homes and hospital settings, and was previously a licensed certified nursing assistant. In March 2013, she took Curry to the emergency room because she had been experiencing confusion and insomnia. Curry's medical records from this visit indicated she weighed 105 pounds, which appellant characterized as her "baseline weight for years." At the time of this visit, a doctor told appellant that Curry needed regular care from a physician. Despite this, appellant did not take Curry to a doctor or seek medical care for Curry at any point before her death six months later.

---

[2] "[I]nanition is the state of weakness and debilitation caused by the lack of proper nutrition." Correll v. Commonwealth, 269 Va. 3, 11, 607 S.E.2d 119, 123 (2005).

Appellant told an investigator that Curry "was like an adopted grandmother to me, you know, I would do anything to take care of her, make sure I took care of her needs. I loved her." Appellant also described herself as Curry's primary caregiver and provider of home health care. She stated that she had noticed Curry was "slowing down" over the seven to ten days preceding her death and her appetite had lightened. She acknowledged that Curry had lost weight. She noted that when she left for her trip, she thought Curry looked as if she were "about to pass away." Despite these observations, appellant did not take Curry to a doctor or seek other medical assistance for her before leaving for her trip, or alert her sister or niece that this might be necessary.

## II. ANALYSIS

Appellant argues that the evidence was insufficient to show that Curry died as a result of her neglect. "On appeal, we 'consider the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth, the prevailing party at trial.'" Wagoner v. Commonwealth, 63 Va. App. 229, 233, 756 S.E.2d 165, 167 (2014) (quoting Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 924 (2000)), aff'd, 289 Va. 476, 770 S.E.2d 479 (2015). "This Court must review the jury's factual conclusions with the highest degree of appellate deference, deferring to the jury's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id. at 256, 756 S.E.2d at 179.

Code § 18.2-369 states in relevant part that it is "unlawful for any responsible person to abuse or neglect any incapacitated adult" and that "[a]ny responsible person who abuses or neglects an incapacitated adult in violation of this section and the abuse or neglect results in the death of the incapacitated adult is guilty of a Class 3 felony." The statute defines "neglect" as "the knowing and willful failure by a responsible person to provide treatment, care, goods or

- 3 -

services which results in injury to the health or endangers the safety of an incapacitated adult." For such failure to be "willful," it must be "an intentional, purposeful act *or omission* in the care of an incapacitated adult by one responsible for that adult's care." Correll, 269 Va. at 13, 607 S.E.2d at 124 (emphasis added).

The jury did not err in finding that Curry's death was the result of appellant's neglect. The primary cause of Curry's death was severe malnutrition and dehydration. Over the course of six months, her weight dropped from 105 to 45 pounds. Curry depended on her caregiver, appellant, for her daily needs, including food, water, and medical care. Despite a physician's direction that Curry needed routine medical attention, appellant did not take Curry to a doctor again in the intervening months before her death. At the time of her death, Curry was emaciated, her body collapsing in on itself. In the photographs taken soon after her death, Curry is skeletal. Despite appellant's claim that she consistently provided Curry with food and water and that Curry's appetite had only waned in the past week or so, her drastic weight loss indicated that she had been deprived of adequate nutrition for months. Given this evidence, the coroner concluded that the cause of death was homicide. The jury did not err in accepting that conclusion and convicting appellant.

### III. CONCLUSION

The evidence was sufficient to show that Curry's death was the result of appellant's neglect. Accordingly, we affirm.

Affirmed.

- 4 -