# Richmond.

## TOWN OF FALLS CHURCH v. THE BOARD OF SUPERVISORS OF FAIRFAX COUNTY.

September 27, 1928.

The opinion states the case.

*L. C. McNemar* and *Amos C. Crounse*, for the appellant.

*Wilson M. Farr*, for the appellee.

HOLT, J., delivered the opinion of the court.

The town of Falls Church was incorporated by an act of the General Assembly approved March 30, 1875 (Acts 1874–75, chapter 316). Under section 5 of the original charter the town sergeant was made overseer of roads and streets within the town. In that section it is provided:

"For this purpose the town of Falls Church is hereby declared to be one of the road districts of the township of Falls Church. No road tax shall be assessed upon the property within the corporation, except by the council aforesaid, which road tax shall be expended upon the roads and streets of said town, by the sergeant aforesaid, under the direction of the council."

This charter was amended in 1893-94, Acts of General Assembly, page 631. Section 9 of the amended charter is:

"The corporation shall constitute a separate road district and a separate school district. The council shall elect school trustees for the corporation in the manner provided by section fourteen hundred and sixty-nine of the Code of Virginia before such section was amended. No district school tax and no district

road tax shall be assessed and collected, except by the council, on any property within the corporation limits. The roads within the corporation limits shall be under the general control of the council. The corporation, in so far as the said territory is located in Fairfax county, shall be entitled to all the benefits accruing to a road district and a school district under the laws in force in that county; and in so far as the said territory is located in Alexandria county, it shall be entitled to all the benefits accruing to a road district or a school district under the laws in force in that county."

By an act approved March 3, 1924 (Acts 1924, chapter 79), the town charter was again amended, and in this amended charter section 9 appears thus:

"The town shall constitute a separate road district and a separate school district. The school district shall be known as the 'Town of Falls Church school district.' The council shall appoint school trustees for the town in the manner provided by law. No district school tax and no district road tax on any property within the corporate limits shall be assessed or collected except by the council. The roads within the corporate limits shall be under the general control of the council. The town, in so far as it is located in Fairfax county, shall be entitled to all the benefits accruing to a road district and school district under the laws in force in that county; and in so far as the town is located in Arlington county, it shall be entitled to all the benefits accruing to a road district or a school district under the laws in force in that county."

Falls Church magisterial district is one of the six magisterial districts which make up Fairfax county. The town lies partly within the county of Arlington, embracing portions of Washington and Arlington districts, and partly within the county of Fairfax, embrac-

ing a small portion of Providence district and a large portion of Falls Church district in that county.

On the 3rd of October, 1924, there was presented to the judge of the circuit court of Fairfax county a petition pursuant to an act of the General Assembly approved March 28, 1922 (Laws 1922, chapter 513), signed by eighty resident qualified voters of Falls Church magisterial district, of whom fifty-three resided within the corporate limits of the town of Falls Church, requesting the issuance of a writ of election to the end that the sense of the qualified voters of the district, both those residing in the town and those residing out of it, might be taken on the question as to whether or not there should be a bond issue of $262,000.00 for the purpose of constructing these two roads:

"1. The Columbia pike, running from Annandale to the Arlington county line, to be of concrete.

2. Commencing at a point on the Lee highway in the town of Falls Church and thence to a point on the Little River turnpike, Route No. 36 of the State highway system, at or near Annandale, to be part gravel and part macadam."

The court, upon an inspection of that petition, was satisfied that all of the preliminary statutory requirements had been met, and that it was regular upon its face; that the bond issue was sufficient for the purpose mentioned and, including a $100,000.00 issue theretofore had, was within the statutory limit of fifteen per cent of the total assessed taxable values, not including intangible personalty at the time in said district. In this estimate were included values in that portion of said district within the limits of Falls Church.

Pursuant to these preliminary proceedings the court entered an order directing that the election be held on November 4, 1924, and that the polls be open within

the district including that portion of it within the corporate limits of the town. At that time the assessed value of such property within the district outside of Falls Church was $1,808,997.73, and the assessed value within the town was $769,386.89. If the town values had been excluded in order to keep within the statutory limit of fifteen per cent, the maximum issue would have been $171,349.55, rather than $262,000.00.

The election was duly held and 534 ballots were cast. Of these, five were void, 409 favored the bond issue, and 120 opposed it, the majority being 289. Within the town of Falls Church, 302 votes were cast, of which five were void, 244 were for the bond issue, and fifty-three were against it. The qualified voters of that portion of the district within the town and certain nearby voters voting at Falls Church precinct cast, as we have seen, 302 votes. Of these 237 were by actual count residents of the town. From this it appears that but for the citizens of the town the election would not have been ordered, and but for their vote the bond issue would not have been endorsed.

The object of this suit is to enjoin the board of supervisors of Fairfax county from assessing, levying and collecting any county or district road tax on property within the town for the purpose of paying interest on these bonds, or for the purpose of creating a sinking fund to be devoted to their payment.

A temporary injunction was awarded which was afterwards dissolved and the cause is now before us on appeal.

This bond issue was put upon the district by citizens of the town. In *Dickinson* v. *Board of Supervisors*, 146 Va. 57, 135 S. E. 829, Judge Chichester, in commenting upon the equities in such a situation, says:

"It is hardly consistent with reason or fairness that voters in an incorporated town could saddle a

bonded indebtedness upon the surrounding community for a permanent improvement of roads, and then be exempt from the payment of taxes to pay interest on, and to provide a sinking fund for, the retirement of such indebtedness.''

The validity of this tax rests in a large measure upon the construction of two acts of the General Assembly, one approved March 28, 1922 (Laws 1922, chapter 513), and one on March 29, 1929 (Laws 1922, chapter 519). The act of March 28, 1922, is general and re-enacts an act approved September 5, 1919, providing for the issuance of county bonds for permanent road or bridge improvements in magisterial districts. Section 7 in part is:

''A special tax shall be levied on all property liable to county or district road tax in such magisterial district in which the proceeds of the bonds have been or are to be expended, including such property located or the situs of which for taxation is within the limit of any incorporated town situated within such district.''

This it is claimed has no application because it has been superseded by an act approved March 29, 1922, where it is said that:

''A tax shall be levied on all property liable to county and district tax in such magisterial district in which the proceeds of the bonds have been or are to be expended, including the property if any located or the situs of which for taxation is within the limit of any incorporated town situated within such district, *wherein real estate is subject to county and district road tax*.''

Plaintiff contends that this read in connection with those charter provisions which declare that the town shall constitute a separate road district, whose property for road purposes can be taxed only by the town council, prevents the supervisors from levying any road tax

upon property within the magisterial district in which it is located.

The act of March 29, 1922, purports to amend section 7 of the act of 1919, but the act of 1919 had already been repealed by the act of March 28, 1922, and, therefore, upon its face was an amendment of an act not then in existence. In this state of facts two courses were open to the court. It might have held that an act which purports to amend an act which had been repealed is but a nullity; or it might have adopted the construction which was actually adopted in the *Dickinson Case*. It was there said:

"But as the act of 1919 was re-enacted in its entirety by the act of March 28, 1922 (Acts of 1922, page 858 [888]), and this act, with the proviso, was made an emergency act and was in force from it passage, section 7 of the act of 1919, had been superseded by section 7 of the act of March 28, 1922, with its repealing clause (section 12), when the act of March 29, 1922 (Acts of 1922, page 915 [905]), was passed, and the amendment must have applied to section 7 of the 1922 act of March 28. The act of March 29th did not purport to amend any part of either the act of 1919 or of March 28, 1922, except section 7, and section 12 was in as full force and effect as if the act of March 29th had not been enacted."

This left as the governing statute the general act of March 28, 1922, which provides for the issuance of county bonds for permanent roads, amended by the act of March 29, 1922, which amendment applied only to section 7.

■ It is true that acts declared to be emergency acts take effect from the date of their approval by the Governor, but it is permissible to examine the conditions under which they were passed to ascertain legisla-

tive intent. Both of these acts were Senate Bills. The act of March 29 was Senate Bill 232 and was introduced on February 2, 1922 (Journal, 161), was passed by the Senate March 1, 1922 (Journal, 530), and was reported back as passed by the House under report dated March 9, 1922 (Journal, 813).

The act of March 28, 1922, was Senate Bill No. 367, introduced February 16, 1922 (Journal, 340), fourteen days after the introduction of Bill No. 232, passed March 6, 1922 (Journal 639), five days after the passage of Bill No. 232, and was reported as passed by the House under communication dated March 11, 1922, received by the Senate March 14, 1922 (Journal, 965). Both bills were duly signed by the president on the same date, to-wit, March 20, 1922 (Journal, 993-994).

If the last act introduced had been the last passed, the situation would have been simpler, but the results are the same in either instance.

The unamended act of March 28, 1922, chapter 513, section 7, provided that:

"A special tax shall be levied on all property liable to county or district road tax in such magisterial district in which the proceeds of the bonds have been or are to be expended, including such property located or the situs of which for taxation is within the limits of any incorporated town situated within such district."

■ If the power here granted conflicts with any charter exemptions theretofore given, it must prevail as appears from the *Dickinson Case*. On March 28th the board of supervisors had a clear right to impose this levy. In the act of March 29th, section 1, it is provided that such a tax shall be levied:

"On all property liable to county and district tax in magisterial district in which the proceeds of the bonds

have been or are to be expended, including the property if any located or the situs of which for taxation is within the limits of any incorporated town situated within such district, *wherein real estate is subject to county and district road tax, etc.*"

■ The real estate in the town was then "subject to county and district road tax," in terms made subject to it by the act of March 28th.

As an addition to the burden of local maintenance the legislature has seen fit to add that made necessary by the construction of modern permanent hard-surfaced roads.

The equities which inhere in the defendant's case appeal to us. It would be unlooked for and curious if the citizens of a town had power to call an election and to direct the issuance of bonds for which they are in no wise liable, and we would be loath to reach the conclusion that they had such power even though the letter of the statute demanded it.

In Black on Interpretation of Laws, 48, it is said:

■ " 'A statute should be construed with reference to its spirit and reason; and the courts have power to declare that a case which falls within the letter of the statute is not governed by the statute, because it is not within the spirit and reason of the law, and the plain intention of the legislature.' "

■ There is nothing in the act of March 28, 1922, as amended (Laws 1926, chapter 527) to prevent the levy.

In *Dickinson* v. *Board of Supervisors, supra,* when the court came to deal with the $205,000.00 bond issue, it was of opinion that any exemptions given to the town of Scottsville by its charter of 1874 (Laws 1874, chapter 331) were repealed by the act of 1919, which is now the act of March 28, 1922, and for like reasons the charter provisions of the town of Falls Church granted before

March 28, 1922, so far as they are in conflict with that act, are repealed by it.

■■ But the charter of the town of Falls Church was amended by act approved March 3, 1924, and this latest amendment contains the same exemptions from district road taxes enjoyed by the town from the beginning, and prevails over the act of March 28, 1922, so far as it conflicts therewith.

It follows that the *Dickinson Case* cannot be relied upon to sustain the defendant's claim if it rests on this principle alone.

But as a further reason for the conclusions reached there, the court went on to say:

"And in addition and supplemental to what we have said we think the 1919 act related to the issuance of district road bonds for permanent road improvement, a comparatively new subject of legislation in Virginia; that it was intended to embrace for the purpose of taxation all property subject to county or district tax in every county or magisterial district in the State which availed itself of the provisions of the act. The act of 1919 was passed with full knowledge on the part of the legislature, of the almost universal provisions in town charters similar to section 6 of the town charter of Scottsville, and of section 1987 of the Code. It is inconceivable, under such circumstances, that it did not intend that taxation for this new purpose, permanent road improvement, should be separate and distinct from maintenance and improvement of roads in the old way, and that urban communities, so peculiarly benefitted by permanent good roads, should bear their proportion of such improvement."

■ All of this is entirely in line with recent legislation looking to the construction of permanent highways. This movement in its comprehensiveness is so complete

a departure from all that has heretofore been done relative to road building in Virginia as to make ancient legislation on that subject for the most part obsolete. When the legislature turned over to town authorities taxable resources for the care of their streets, and told the counties to stand aside, and when it undertook to provide for the building of great and permanent highways for the use of all the people, it was talking about different subjects, and we should be slow to hold that what was said in the one case had any application at all to the other.

It is true that the purpose to provide for the maintenance of local streets as a reason for this exemption more clearly appears in the Scottsville charter than it does in the charter of the town of Falls Church, but the influences which governed the legislature in these grants was the same in each instance. Most of the town charters of that time contained similar provisions. It is manifest that it would have been a source of constant friction if a town had had to depend upon a board of supervisors to keep its streets in condition, and so this work was turned over to the town itself; but this consideration wholly fails when we come to deal with State highways, and it is likewise clear that the re-enactment of such provision from time to time as the charter was amended carried no purpose to give any new exemption. They mean now what they meant in the beginning, and that was to turn over local maintenance of local streets to local authorities, and had nothing whatever to do with permanent State highways built for all the people.

This court is therefore of opinion that the tax in controversy was authorized by the act of March 28, 1922, as amended (Laws 1926, chapter 527), and that the charter provisions relied upon have no application

to taxes laid for the construction and maintenance of permanent hard-surfaced State highways. It follows that the decree appealed from must be affirmed, and it is so ordered.

*Decree affirmed.*