# Richmond

## JOHN T. WATKINS v. JAMES K. HALL.

January 11, 1934.

Present, All the Justices.

The opinion states the case.

*Charles Pickett* and *Eppa Hunton, IV*, for the plaintiff in error.

*Gardner L. Boothe* and *McGuire, Riely & Eggleston*, for the defendant in error.

HOLT, J., delivered the opinion of the court.

This is a *habeas corpus* proceeding in which John T. Watkins, a citizen of California, seeks relief from detention, charged to be unlawful, in the Westbrook Sanitarium, a private institution devoted to the treatment of nervous and insane patients, conducted by Dr. James K. Hall.

Application was originally made to the Circuit Court of Henrico county, which denied the relief prayed for. Mr. Watkins is a veteran of the Spanish-American War and of the World War, and has been retired from the United States Coast and Geodetic Survey with the rank of commander. His retirement pay, pension and disability payments approximate $400 a month. He has other property. The cost of his maintenance at Westbrook is $50 a week.

On December 12, 1931, in the Corporation Court of the city of Alexandria, on petition of his sisters, Elizabeth Rosson and Emma Watkins Evans, he was adjudged to be a drug addict and was committed to Westbrook Sanitarium. In accordance with that order he was taken there. His nephew, John W. Rosson, was appointed committee for his estate. On April 2, 1932, another inquisition was had at which he was adjudged insane by a commission composed of William Newsome, Jr., a justice of the peace for Henrico county, and Drs. Howard R. Masters and Beverley R. Tucker, and was committed to Westbrook Sanitarium, in which he already was. On July 16, 1932, he was again adjudged insane by a commission composed of H. W. Bates, Jr., a justice of the peace for Henrico county, and Drs. R. K. Foxwell and Joseph R. Jordan, and was again committed to that sanitarium. On January 16, 1933, he was again adjudged insane by a commission composed of Hugh W. Davis, a justice of the peace for Henrico county, and Drs. Beverley R. Tucker and Howard R. Masters, and was again committed to that institution. In it he has been continuously confined since December, 1931.

The writ in this case issued on April 1, 1933, and

on April 18, 1933, this order was entered by the Circuit Court of Henrico county:

"This 18th day of April, 1933, John T. Watkins was brought into court by James K. Hall, of Westbrook *Sanitorium* in the county of Henrico, Va., in obedience to the writ of *habeas corpus ab-subjiciendum* awarded on the 1st day of April, 1933, and directed to the said James K. Hall, and thereupon this cause came on to be heard on the petition of John T. Watkins and the answer thereto of James K. Hall, both being duly sworn to, and on the testimony of the petitioner, on his own behalf and Edmund P. Ellis, and R. D. Chase on behalf of the petitioner, and on the testimony of John W. Rosson, Jr., Dr. James K. Hall and Dr. Beverley R. Tucker, on behalf of the respondent, all taken orally in open court, on exhibits Nos. 1, 2, 3 and 4 *file* with the testimony of John W. Rosson, Jr., and the record of the proceedings of an inquisition conducted by Hugh W. Davis, justice of the peace of the county of Henrico, and Dr. Beverley R. Tucker and Dr. Howard R. Masters, on the 16th day of January, 1933, in which the petitioner was adjudged insane, and on the order of *committment* issued by Hugh W. Davis, justice of the peace, on the 16th day of January, 1933, directed that the petitioner be committed to Dr. O. B. Darden or Dr. J. K. Hall, the superintendent of Westbrook *Sanitorium* at Brook Hill, Va.;

"And it was also shown to the court that on the 2nd day of December, 1931, that the petitioner was adjudged a drug addict by commission composed of George S. French, a justice of the peace of Alexandria, Va., and Dr. Hugh McGuire and Dr. Llewellyn Powell, and committed to Westbrook *Sanitorium* for treatment; that on April 2, 1932, he was adjudged insane by a commission composed of William Newsome, Jr., justice of the peace of the county of Henrico, and Drs. Beverley R. Tucker and Howard R. Masters, and committed to Westbrook *Sanitorium,* and that July 16, 1932, the petitioner was adjudged insane by a commission composed of H. W. Bates, Jr.,

justice of the peace of the county of Henrico, and Dr. R. K. Foxwell and Joseph R. Jordan, and committed to Westbrook *Sanitorium;* and that the petitioner in consequence of the aforesaid *committment* has been kept at Westbrook *Sanitorium* continuously since December 2, 1931.

"Upon consideration whereof, and upon argument of counsel, the court being of the opinion that the petitioner is a person of unsound mind, and that he is not illegally imprisoned, confined, detained, and restrained of his liberty without lawful authority, as in said writ recited. It is ordered that the writ of *habeas corpus ab-subjiciendum,* awarded as aforesaid, be quashed and that the petitioner be remanded to the care of James K. Hall, of Westbrook *Sanitorium* in the county of Henrico, Va., to which action of the court the petitioner by counsel excepts."

Notwithstanding this order, the judge did think, as shown by bill of exception No. 2, that Code, section 1020, forbade the detention of an insane person in a private institution for more than four months. This is that bill duly signed:

"Be it remembered that at the conclusion of the evidence in this case, the court stated in the presence of counsel that in its opinion section 1020 of the Code of Virginia prohibited the detention of an insane person in a private institution for a period of more than four months, but that from the evidence of the physicians it was of the opinion that the petitioner was insane and that therefore the petitioner should not be released, but that the legality of his detention should be settled by the Supreme Court of Appeals of Virginia, and for this reason the petitioner should not be discharged from custody, to which action of the court counsel for the petitioner excepted, and tendered this his bill of exception No. 2, which he prays may be signed, sealed and made a part of the record in this case, and the same is accordingly done this 16th day of June, 1933."

So much of said Code, section 1020, as is pertinent reads:

"If the justices find that the patient is an insane, epileptic or inebriate person and ought to be confined, they may, upon request of the patient's friends, commit said patient to a private sanitarium, there to be confined until removed by his or her friends or discharged by the physician in charge of such institution; *but in no event shall such patient be kept in any such institution for a period exceeding four months.*" (Italics supplied.)

This statute first appears in the Acts of 1904, ch. 240, p. 349, and is perfectly unambiguous on its face. So much is conceded. But it is said that from it these unreasonable results follow:

"If the construction of the statute here sought be sound, then it will result that an insane man, able to pay for private care under skillful physicians who thoroughly understand his case, but who require more than four months to effect a cure, may, on his own motion, be removed from a private sanitarium contrary to the best judgment of those most deeply interested in his welfare and committed to the custody of 'friends,' or placed in a public institution where all beneficial results of the care theretofore given him may be lost. All this, no matter what his condition may be—whether his insanity be of a mild nature or such as to render him a dangerous maniac," and that into it should be read some provision to the effect that at the expiration of each four-month period there might be a new commitment by some legally constituted tribunal.

It is elementary that we look to the intention of the legislature in construing its mandates, and at times the letter of the statute is not followed.

In *Town of Falls Church* v. *Board of Sup'rs of Fairfax County,* 151 Va. 672, 144 S. E. 870, 873, the court quoted with approval this statement from Black on Interpretation of Laws, p. 48:

" 'A statute should be construed with reference to its spirit and reason; and the courts have power to declare that a case which falls within the letter of the statute is not governed by the statute, because it is not within the

spirit and reason of the law, and the plain intention of the legislature.'" See, also, *Buzzard* v. *Commonwealth*, 134 Va. 641, 114 S. E. 664; *Church of the Holy Trinity* v. *United States*, 143 U. S. 457, 12 S. Ct. 511, 36 L. Ed. 226; 25 R. C. L. 959.

This general principle may be conceded, but the rule invoked is subject to another equally well established.

In *Floyd, Tr.* v. *Harding*, 28 Gratt. (69 Va.) 405, Staples, J., said:

"While in the construction of statutes the constant endeavor of the courts is to ascertain and give effect to the intention of the legislature, that intention must be gathered from the words used, unless a literal construction would involve a manifest absurdity. Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed. The authorities in support of this principle are almost innumerable. It is unnecessary to cite them, as they may be found in Dwarris on Statutes, 181-4, 209; 2, 204-5, 208." *London Bros.* v. *National Exchange Bk.*, 121 Va. 460, 93 S. E. 699; *Commonwealth* v. *Rose*, 160 Va. 177, 168 S. E. 356; *Caminetti* v. *United States*, 242 U. S. 470, 37 S. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168.

Does literal application of the language used lead to absurd results? We think not.

It is the deliberate declaration of a sound public policy. State hospitals for the care of the insane can have but one purpose and that is to cure and discharge the patient at the earliest possible moment. In no conceivable circumstances can they be benefited by the prolonged detention of these unfortunate citizens. When we come to private institutions the situation changes. Primarily they are established for profit and usually a full complement of inmates is necessary to effect their purpose. The element of private profit is necessarily present and is lessened when the patient goes. It should by no possibility

contribute to his detention. The State, within the limits of its power, has undertaken to protect those who cannot protect themselves, and will delegate this right to no private interest. It is not by chance that the statute is framed to prevent what would be, in effect, a permanent commitment to a private institution. This general purpose and policy is not affected by the fact that there are institutions like that in judgment under the control of high-minded gentlemen. Unfortunately it is still true that "when self the wavering balance shakes, it's rarely right adjusted."

The statute is in a high degree mandatory. "In no event" can the commitment be for more than four months. When a patient is insane and has been committed, and where there is no suggestion of his recovery, a recommitment and particularly recommitments from time to time to circumvent this four months' limitation are but idle gestures, deliberately designed to accomplish what the statute has told us shall not be done.

If the patient is an inebriate or addicted to the use of drugs, he cannot be detained for more than four months without his written consent entered of record. Code, section 1071.

Ample statutory provision is made for the disposition of insane people where permanent detention in a public hospital is deemed undesirable.

"Except in the case of a person charged with crime and subject to be tried therefor, or convicted of crime and subject to be punished therefor, the superintendent of any hospital or colony, or the circuit court of any county or corporation court of a city, may deliver any insane or epileptic person, confined in such hospital or colony or the jail of such county or city, to any friend who will give bond, with surety, to be approved by the court or superintendent of any hospital or colony, with the condition to restrain, maintain and take proper care of such person without expense to the Commonwealth of Virginia, or any subdivision thereof; and where an insane person, except as aforesaid, is deemed by the superintendent of a hos-

pital both harmless and incurable, the superintendent may deliver him without such bond to any friend who is willing, and in the opinion of the superintendent able and a suitable person, to take care of him without cost to the Commonwealth; * * *." Code, section 1040.

Patients may likewise be released on furlough. "The superintendent of any hospital or colony may furlough any patient therein and place him under the care of his committee, relative, friend or other responsible or proper person, or without such care, for a period to be determined by said superintendent." Code, section 1041. That section goes on to provide that bonds may be required, conditioned for the patient's proper care and that they be returned to the hospital upon the demand of the superintendent.

■ Whenever a patient is released under bond as provided for in said section 1040, he who gives it may place his ward in a private institution or make such other arrangements as seem wise for his care and custody, but under it he is responsible for any abuse of the trust imposed upon him. In such a case a private institution takes under a private arrangement with the bondsman and not under a public commitment. The State, however, retains the power to supervise and to see that the trust imposed be not abused. If immediate permanent private commitments could be had, supervision by the State, which might be at times necessary to prevent abuses, would be impossible.

■ Special provision is made for the disposition of non-resident insane. Commitments are had, as in the case of residents, after which "the superintendent in one case and the court to whose jail he may have been committed in the other, shall, as soon as practicable, cause him to be returned to his friends, if known, or the proper authorities of the State or country from which he came, if ascertained, and such return be by the said superintendent or court deemed expedient or practicable; * * *." Code, section 1030.

It will be observed that as to them no bond is required.

■ What shall be done with the petitioner? The Westbrook Sanitarium has no right to his custody, but he is insane and has been legally adjudged to be insane. His interest and public interest both require that he be not liberated. That plan should be followed which should have been followed long ago, certainly which should have been followed within four months after he was adjudged insane. Had that been done he would have been sent to the Western State Hospital at Staunton. He should now be sent there at his expense and dealt with as provided for in said section 1030 of the Code. He is to be "returned to his friends."

We have purposely refrained from discussing the relative claims and charges of those who are candidates for his custody. The legality of his detention alone is in issue here. The superintendent of the Western State Hospital should, and we know that he will, weigh these claims with discriminating care, and will be governed by the interest of his ward alone.

The judgment appealed from is reversed, and it is so ordered.

*Reversed.*