COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Frank and Kelsey
Argued by teleconference


COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
v.        Record No. 0234-07-2                    JUDGE ROBERT P. FRANK
AUGUST 14, 2007

RONALD LEWIS SCOTT SNYDER


FROM THE CIRCUIT COURT OF KING GEORGE COUNTY
Horace A. Revercomb, III, Judge

Benjamin H. Katz, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellant.

Benjamin H. Woodbridge, Jr. (Woodbridge, Ventura & Kelly, P.C.,
on brief), for appellee.


The Commonwealth, appellant, appeals, pursuant to Code § 19.2-398, the trial court's

decision to grant Ronald Lewis Scott Snyder's motion to suppress the evidence gathered pursuant to

a traffic stop of his vehicle. The trial court ruled that the officer did not have reasonable, articulable

suspicion to effect the traffic stop. For the reasons stated, we agree and affirm the trial court's order

granting the motion to suppress.

BACKGROUND

On April 29, 2006, at approximately 4:20 p.m., Deputy Doug Green of the King George

County Sheriff's Office received information from a police dispatcher that an anonymous caller had

observed a white male consuming alcohol while driving. The caller relayed the location, direction,

and license plate number of the vehicle the subject was driving. The dispatcher checked the license

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

plate number, which indicated that the vehicle, a Ford sedan, was registered to Ronald Snyder, appellee.

About 5 to 10 minutes after receiving the report, Deputy Green observed a vehicle matching the description of the vehicle in the report traveling south on Route 301. Deputy Green saw a white male driving the vehicle, and the license plate also matched that given in the report. Deputy Green followed the vehicle for approximately a mile, "observ[ing] the vehicle's driving conduct," but he "didn't notice anything out of the ordinary that would indicate any type of problem."

Deputy Green noted that the right passenger's side mirror "was completely busted out of the housing." The mirror, which was factory-installed, had "no glass at all." Deputy Green testified that the vehicle had a functional driver's side mirror and a functional rearview mirror.

Deputy Green stopped the vehicle for the broken passenger mirror, believing it to be a "defective equipment violation" pursuant to Code § 46.2-1003. Deputy Green testified that this was his "primary" reason for the stop, but that he also stopped the vehicle "loosely based on the information given" to him by dispatch. After the vehicle stopped, Deputy Green's investigation led him to charge appellee with drinking while driving, driving under the influence of alcohol, and felony child neglect.[1]

Appellee filed a motion to suppress, arguing that Deputy Green did not have a reasonable, articulable suspicion for stopping his vehicle. Appellee contended that, as he had a working driver's side mirror and a working rearview mirror, he was not required to have a passenger side mirror. Thus, the broken glass in this mirror could not sustain a charge of defective equipment. Appellee also argued that, as the information about his consumption of an alcoholic beverage while driving

---

[1] Deputy Green also charged appellee with defective equipment for the broken passenger mirror.

came from an anonymous caller, Deputy Green needed some sort of corroboration of that offense before using that information as the basis for the traffic stop.

The trial court granted appellee's motion to suppress, finding no corroboration that would allow Deputy Green to use the anonymous tip as the basis for stopping appellee. Further, the trial court held that, as appellee had a working driver's side and a working rearview mirror, he was not required to have a working passenger side mirror. Thus, any defect in that mirror could not sustain a charge of defective equipment, and, consequently, the trial court found that this defect could not be the basis of Deputy Green's reasonable suspicion to conduct the traffic stop.

This appeal follows.

ANALYSIS

On appeal, the Commonwealth contends the trial court erred in finding that the stop was without reasonable, articulable suspicion. The Commonwealth argues that the trial court, in evaluating whether the broken passenger mirror could serve as the basis for the stop, improperly considered whether a violation of Code § 46.2-1003 had actually occurred.[2] The Commonwealth maintains that, while it may not be a violation of that code section, it was reasonable for Deputy Green to believe that appellee had a duty to maintain the mirror, as it is an item of equipment subject to yearly motor vehicle inspection.

When this Court reviews a trial court's ruling on a motion to suppress, "'the burden is upon [the losing party] to show that the ruling, when the evidence is considered most favorably to the [prevailing party], constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (*en banc*) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)).

_____

[2] The Commonwealth, on appeal, does not contend that the anonymous tip provided a reasonable, articulable suspicion for the traffic stop; thus, that issue is not before us on appeal.

First, we must consider whether a broken passenger side mirror constitutes defective equipment in violation of Code § 46.2-1003. "[W]hen analyzing a statute, we must assume that 'the legislature chose, with care, the words it used . . . and we are bound by those words as we interpret the statute.'" City of Va. Beach v. ESG Enters., 243 Va. 149, 153, 413 S.E.2d 642, 644 (1992) (quoting Barr v. Town & Country Props., 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990)). "'Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed.'" Barr, 240 Va. at 295, 396 S.E.2d at 674 (quoting Watkins v. Hall, 161 Va. 924, 930, 172 S.E. 445, 447 (1933)).

Code § 46.2-1003 provides:

> It shall be unlawful for any person to use or have as equipment on a motor vehicle operated on a highway any device or equipment mentioned in § 46.2-1002 which is defective or in unsafe condition.

Code § 46.2-1002 applies to "any lighting device, warning device, signal device, safety glass, or other equipment for which approval is required by any provision of this chapter."[3] Mirrors are not listed separately in Code § 46.2-1002. Thus, we must determine whether mirrors are "other equipment for which approval is required" by any provision in Chapter 10 of the Virginia Code.

The Commonwealth argues that because mirrors are "an item of equipment subject to yearly motor vehicle inspection under the auspices of the [S]uperintendent of the Virginia State Police," this inspection requirement makes mirrors an item of equipment for which approval is required for the purposes of Code § 46.2-1002. The Commonwealth cites to no authority for this proposition, nor could we find any authority to support its argument.

---

[3] The "approval" to which this statute refers is that of the Superintendent of the Department of State Police of the Commonwealth. Code §§ 46.2-100 and 46.2-1002.

We find there is a marked difference between the "approval" requirement and "inspection" of vehicles pursuant to Code § 46.2-1157. As part of its highway safety program, Virginia requires motor vehicles registered in the Commonwealth to be inspected annually for mechanical and equipment defects at an official inspection station. See Code §§ 46.2-1157 and 46.2-1158; Moore v. Commonwealth, 49 Va. App. 294, 302, 640 S.E.2d 531, 535 (2007). This "Virginia Annual Motor Vehicle Inspection Program was developed and adopted to promote highway safety. Its aim is to assure that all Virginia registered vehicles are mechanically safe to operate over the highways of the Commonwealth." 19 VAC 30-70-1. Thus, each vehicle in the Commonwealth is subject to annual inspection.

However, unlike the yearly inspection requirement, the "approval" procedure does not establish whether a piece of equipment on a particular vehicle, on a specific date, meets the appropriate inspection standards. Instead, the approval procedure requires the "submission of a sample of the device for test and record purposes, submission of evidence that the device complies with this title and with recognized testing standards which the Superintendent is hereby authorized to adopt, and payment of the fee as provided by § 46.2-1008." Code § 46.2-1005. Additionally,

> [t]he Superintendent may waive such approval and the issuance of a certificate of approval when the device or equipment required to be approved by this title is identified as complying with the standards and specifications of the Society of Automotive Engineers, the American National Standards Institute, Incorporated, or the regulations of the federal Department of Transportation.

Id. Clearly, the certificate that is issued for the particular "approved device or equipment" contemplates a prototypical safety concept and is not part of the annual inspection process, which is unique to every vehicle in the Commonwealth.

Thus, our review of Title 46.2 leads us to conclude that "inspection" does not equate with "approval."

Code § 46.2-1082 sets out the requirements for mirrors on a vehicle. That code section provides:

> No person shall drive a motor vehicle on a highway in the Commonwealth if the vehicle is not equipped with a mirror which reflects to the driver a view of the highway for a distance of not less than 200 feet to the rear of such vehicle.
>
> No motor vehicle registered in the Commonwealth, designed and licensed primarily for passenger vehicular transportation on the public highways and manufactured after 1968 shall be driven on the highways in the Commonwealth unless equipped with at least one outside and at least one inside rear view mirror meeting the requirements of this section.
>
> Notwithstanding the other provisions of this section, no motor vehicle which either has no rear window, or which has a rear window so obstructed as to prevent rearward vision by means of an inside rear view mirror, shall be required to be equipped with an inside rear view mirror if such motor vehicle has horizontally and vertically adjustable outside rear view mirrors installed on both sides of such motor vehicle in such a manner as to provide the driver of such motor vehicle a rearward view along both sides of such motor vehicle for at least 200 feet.

Code § 46.2-1082. Nothing in this code section, nor in any other provision in this chapter, requires mirrors to be "approved."[4] Thus, a defect in any mirror on a vehicle does not fall under the ambit of Code §§ 46.2-1002 or 46.2-1003.

Instead, a defect in a mirror must be evaluated under Code § 46.2-1082, which establishes the minimum requirements for mirrors. Code § 46.2-1082 clearly requires only one outside mirror, as long as that vehicle is equipped with a rearview mirror. Here, Deputy Green testified that appellee's vehicle was equipped with a working driver's side mirror and a working

---

[4] For example, Code § 46.2-1011 requires vehicles to be equipped with two headlights "approved by the Superintendent," and Code § 46.2-1019 requires approval by the Superintendent of optional spotlights.

rearview mirror. Thus, under Code § 46.2-1082, appellee did not need a passenger's side mirror on his vehicle, and any defect in this mirror could not be a violation of the minimum requirements set out in that statute.

The Commonwealth maintains that, even if Deputy Green made a mistake of law in believing that a broken passenger side mirror constituted a defective equipment violation under Code § 46.2-1003, this mistake of law was objectively reasonable. The Commonwealth contends that a reasonable officer, knowing that all mirrors must be in working condition in order to pass a yearly motor vehicle inspection, would believe that appellee had a duty to maintain his passenger mirror in proper condition.

The Commonwealth essentially argues that a mistake of law, if objectively reasonable can form the basis of reasonable suspicion. We disagree.

"[S]topping an automobile and detaining its occupants constitute a 'seizure' within the meaning of [the Fourth] Amendment[]." Delaware v. Prouse, 440 U.S. 648, 653 (1979). "If a police officer has reasonable, articulable suspicion that a person is engaging in, or is about to engage in, criminal activity, the officer may detain the suspect to conduct a brief investigation without violating the person's Fourth Amendment protection against unreasonable searches and seizures." McGee, 25 Va. App. at 202, 487 S.E.2d at 263.

Reasonable suspicion is "'a particularized and objective basis' for suspecting the person stopped of criminal activity." Ornelas v. United States, 517 U.S. 690, 696 (1996) (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)). "There is no 'litmus test' for reasonable suspicion. Each instance of police conduct must be judged for reasonableness in light of the particular circumstances." Castaneda v. Commonwealth, 7 Va. App. 574, 580, 376 S.E.2d 82, 85 (1989) (*en banc*) (citing Terry v. Ohio, 392 U.S. 1, 21 (1968)). "In order to determine what cause is sufficient to authorize police to stop a person, cognizance must be taken of the 'totality

of the circumstances -- the whole picture.'" Leeth v. Commonwealth, 223 Va. 335, 340, 288 S.E.2d 475, 478 (1982) (citing Cortez, 449 U.S. at 417). As long as an officer reasonably suspects that the "driver is violating any one of the multitude of applicable traffic and equipment regulations," the police officer may legally stop the vehicle. Prouse, 440 U.S. at 661.

We are persuaded by the reasoning of Bass v. Commonwealth, 259 Va. 470, 525 S.E.2d 921 (2000). In Bass, a police officer assigned to a traffic checkpoint observed the defendant's vehicle approaching the checkpoint. Id. at 473, 525 S.E.2d at 922. When the vehicle was approximately 500 feet away, the defendant turned into a gas station, made a legal u-turn, and began traveling in the opposite direction. Id. at 473, 525 S.E.2d at 922-23. The officer pursued and stopped the defendant for "evad[ing] a traffic checkpoint." Id. at 473, 525 S.E.2d at 923.

The Supreme Court determined that no law prohibited the evasion of a traffic checkpoint and that the defendant had not committed any traffic offense through his actions. Id. at 476-77, 525 S.E.2d at 924-25. The Court rejected the Commonwealth's argument that, even if the defendant's driving actions did not constitute a traffic violation, his actions were sufficient to provide the officer with reasonable suspicion to believe that the defendant was in violation of the law. Id. at 477, 525 S.E.2d at 925. Because the officer's suspicion of a violation was not grounded in law, he did not have the requisite reasonable suspicion to conduct a traffic stop of the defendant's vehicle. Id. at 477-78, 525 S.E.2d at 925.

Here, as in Bass, Deputy Green did not make a mistake of fact about the scope of activities proscribed by a particular law. See United States v. Delfin-Colina, 464 F.3d 392, 399 (3d Cir. 2006) (holding that the officer's mistake was reasonable where he believed that a necklace hanging from a rearview mirror violated a statute prohibiting items that obstructed the driver's vision out of the front windshield, where the court determined that the necklace did not actually obstruct the vision of the driver). Such a mistake of fact, if determined to be made in

good faith and objectively reasonable, can form the basis of reasonable suspicion. Barnette v. Commonwealth, 23 Va. App. 581, 584, 478 S.E.2d 707, 708 (1996) (holding that an arrest made pursuant to a mistake in fact is valid if "(1) the arresting officer believed, in good faith, that his or her conduct was lawful, and (2) the arresting officer's good faith belief in the validity of the arrest was objectively reasonable").

However, "a belief based on a mistaken understanding of the law cannot constitute the reasonable suspicion required for a constitutional traffic stop." United States v. Twilley, 222 F.3d 1092, 1096 (9th Cir. 2000); see also United States v. Tibbetts, 396 F.3d 1132, 1138 (10th Cir. 2005) ("[F]ailure to understand the law by the very person charged with enforcing it is not objectively reasonable."); United States v. Chanthasouxat, 342 F.3d 1271, 1279 (11th Cir. 2003) (holding that a mistake of law cannot provide the "objectively reasonable grounds for reasonable suspicion or probable cause"). "[I]f officers are allowed to stop vehicles based upon their subjective belief that traffic laws have been violated even where no such violation has, in fact, occurred, the potential for abuse of traffic infractions as pretext for effecting stops seems boundless and the costs to privacy rights excessive." United States v. Lopez-Valdez, 178 F.3d 282, 289 (5th Cir. 1999).

Appellee's broken passenger side mirror did not violate any applicable statute or ordinance. In the absence of such a violation, Deputy Green did not have reasonable suspicion to effect the traffic stop of appellee's vehicle. Bass, 259 Va. at 477-78, 525 S.E.2d at 925.

We conclude the trial court did not err in granting the motion to suppress. We therefore affirm the decision of the trial court and remand further proceedings if the Commonwealth be so advised.

                                                                    Affirmed and remanded.