PRESENT: All the Justices

IN RE: REBECCA VAUTER, DIRECTOR,
CENTRAL STATE HOSPITAL

OPINION BY
JUSTICE S. BERNARD GOODWYN

Record No. 151723                                            December 15, 2016

UPON PETITION FOR A WRIT OF PROHIBITION

In this original jurisdiction case, we consider whether a writ of prohibition lies to prevent a circuit court from hearing a habeas corpus petition challenging a pre-trial detention order entered by a different circuit court pursuant to Code § 19.2-169.3(F).

BACKGROUND

On October 4, 2000, a grand jury for the City of Alexandria indicted Gregory Devon Murphy (Murphy) for capital murder of a child, in violation of Code § 18.2-31(12), and two counts of malicious wounding, in violation of Code § 18.2-51. On October 19, 2000, Murphy assaulted his attorney in open court, prompting the Circuit Court of the City of Alexandria (Alexandria Court) to order a competency evaluation under the then-current version of Code § 19.2-169.1.[1] In a report delivered on October 31, the examining psychologist opined that

---

[1] As in effect in October 2000, Code § 19.2-169.1 provided, in relevant part:

A. *Raising competency issue; appointment of evaluators.* -- If . . . the court finds, upon hearing evidence or representations of counsel for the defendant or the attorney for the Commonwealth, that there is probable cause to believe that the defendant lacks substantial capacity to understand the proceedings against him or to assist his attorney in his own defense, the court shall order that a competency evaluation be performed by at least one [qualified] psychiatrist, clinical psychologist or master's level psychologist.

. . . .

D. The competency report. -- Upon completion of the evaluation, the evaluators shall promptly submit a report in writing to the court and the attorneys of record concerning (i) the defendant's capacity to understand the proceedings against him; (ii) his ability to assist his attorney; and (iii) his need for treatment in the event he is found incompetent.

Murphy was not competent to stand trial, but that "[i]t is possible that appropriate mental health treatment, including the administration of antipsychotic medications, may eventually restore Mr. Murphy's capacities in these regards." The court ordered Murphy's competency to be restored.

Murphy has received treatment continuing to the present. The Alexandria Court has conducted periodic reviews pursuant to Code § 19.2-169.3(F), each time finding Murphy incompetent to stand trial.[2] Murphy receives treatment in Central State Hospital in Dinwiddie County.

In 2007, Murphy moved the Alexandria Court to dismiss the capital murder indictment on the ground that Code § 19.2-169.3(F) is unconstitutional. On September 26, 2007, the court found the statute constitutional and denied the motion. It explained that while

> the statute probably could have been a little more clear . . . . Clearly the goal here was a procedure whereby the charges are not to be dismissed, so long as the other provisions of the statute are being complied with, and that is that there be periodic hearings; that there be evidence that the defendant remains incompetent; that there

---

[2] Code 19.2-169.3(F) currently provides that:

In any case when an incompetent defendant is charged with capital murder . . . the charge shall not be dismissed and the court having jurisdiction over the capital murder case may order that the defendant receive continued treatment under subsection A of § 19.2-169.2 for additional six-month periods without limitation, provided that (i) a hearing pursuant to subsection E of § 19.2-169.1 is held at the completion of each such period, (ii) the defendant remains incompetent, (iii) the court finds continued treatment to be medically appropriate, and (iv) the defendant presents a danger to himself or others.

The statute has featured this language since 2003. *See* 2003 Acts chs. 915 & 919 (enacting subsection (D) of Code § 19.2-169.3); 2006 Acts chs. 863 & 914 (amending and reenacting Code § 19.2-169.3, redesignating subsection (D) as subsection (E)); 2007 Acts chs. 781 & 876 (amending and reenacting Code § 19.2-169.3); 2008 Acts chs. 406 & 796 (amending and reenacting Code § 19.2-169.3, redesignating subsection (E) as subsection (F)); 2009 Acts chs. 813 & 840 (amending and reenacting Code § 19.2-169.3); 2012 Acts chs. 668 & 800 (amending and reenacting Code § 19.2-169.3).

be evidence that the treatment is medically appropriate; and that there be evidence that the defendant is dangerous, all of which we have in this case.

It continued that the evidence is "uncontroverted that Mr. Murphy remains incompetent, that the medical treatment is appropriate, and there's evidence that he continues to be a threat to others."[3]

The court also found that the periodic reviews satisfy Murphy's due process rights. Additionally, the court found that there was no equal protection violation because the legislature was entitled to distinguish between defendants charged with capital and non-capital offenses. Finally, the court found that the statute did not violate the prohibition of *ex post facto* laws because, although Code § 19.2-169.3 changed during Murphy's detention, it was a procedural change that did not infringe on any of Murphy's vested rights.

On May 30, 2014, Murphy again moved to dismiss the capital murder indictment and for an order directing the Commonwealth to pursue civil commitment on the ground that his current detention was unconstitutional. He argued that because he was "unrestorably incompetent," restoration treatment was no longer medically appropriate to justify his continued detention under Code § 19.2-169.3(F)(iii).

He also argued that Code § 19.2-169.3(F) violates the constitutional protections established by *Jackson v. Indiana*, 406 U.S. 715, 738 (1972), "that 'the State must either institute the customary civil commitment proceedings that would be required to commit indefinitely any other citizen [not charged with a crime] or release the defendant.'" He claimed that Code § 19.2-169.3(F) impermissibly permits the "indefinite detention of unrestorably incompetent defendants

---

[3] In the interim, both this Court and the United States Supreme Court denied Murphy's petitions for writs of prohibition and habeas corpus challenging the Alexandria Court's order that he be medicated. *In re: Murphy*, Record No. 011057 (July 20, 2001); *Murphy v. Circuit Court*, 534 U.S. 1094 (2002); *Murphy v. Reinhard,* 539 U.S. 944 (2003).

3

charged with capital murder without prospect of release in the community," which "amounts to punishment without adjudication of guilt."

On September 5, 2014, the Commonwealth and Murphy stipulated that Murphy is "unrestorably incompetent to assist counsel and to have a rational understanding of the proceedings," and on September 8, the Alexandria Court issued a "Continuance Order and Finding of Unrestorabilty" regarding Murphy's motion to dismiss. After a hearing on the record, the court issued a letter opinion on November 6, 2014, affirming the constitutionality of the statute, and finding that Murphy remained a danger to himself and others, and that "the treatment [he] is receiving is medically appropriate." By order on November 17, 2014, the court found that "Murphy remains incompetent to stand trial, that continued treatment is medically appropriate, and that the defendant presents a danger to himself and others," and ordered continued treatment under Code § 19.2-169.2.[4]

On April 22, 2015, Murphy filed a petition for a writ of habeas corpus in the Circuit Court of Dinwiddie County (Dinwiddie Court), arguing that the Director was detaining him without lawful authority (Dinwiddie Petition). He argued that the Alexandria Court wrongfully found that continued treatment was medically appropriate under Code § 19.2-169.3(F). Specifically, he claimed that he does not meet criterion (iii) of that section, which is that "continued treatment" be "medically necessary," because it is undisputed that he is unrestorably incompetent, and the word "treatment" is "plainly construed as 'treatment to restore medical competency.'" He argued that his continued detention violated both the Due Process and Equal Protection Clauses of the Constitution of the United States. He asked the Dinwiddie Court to

---

[4] This Court denied Murphy's subsequent petition for a writ of mandamus which asked us to direct the Alexandria Court to dismiss his indictment. *In re: Murphy,* Record No. 150457 (July 9, 2015).

4

order the Alexandria Court to dismiss the capital murder indictment and begin civil commitment proceedings.

The Director moved to dismiss the Dinwiddie Petition, arguing that the Dinwiddie Court lacked jurisdiction under Code § 8.01-654(B)(1).[5] The Dinwiddie Court rejected that argument, finding that Code § 8.01-654(B)(1) only applies when there is both criminal process and a conviction, but when, like here, there is not a conviction, Code § 8.0l-654(A)(l) permits the petition to be filed in any circuit court.

The Director moved for reconsideration. On September 23, 2015, the Dinwiddie Court entered orders memorializing its rulings denying the Director's motions to dismiss and to reconsider.

The Director filed a petition for a writ of prohibition in this Court.

ANALYSIS

In her petition for a writ of prohibition, the Director seeks to prevent the Dinwiddie Court from proceeding in Murphy's habeas matter. She argues that the Dinwiddie Court lacks territorial jurisdiction to hear Murphy's habeas corpus petition because Code §§ 8.01-654(B)(1) and -657, "when read together, evince a clear legislative intent that habeas corpus challenges be

---

[5] Code § 8.01-654 governs writs of habeas corpus, and provides, in relevant part, that

> (A)(1) The writ of habeas corpus ad subjiciendum shall be granted forthwith by the Supreme Court or any circuit court, to any person who shall apply for the same by petition, showing by affidavits or other evidence probable cause to believe that he is detained without lawful authority.
>
> . . . .
>
> (B)(1) With respect to any such petition filed by a petitioner held under criminal process, . . . only the circuit court which entered the original judgment order of conviction or convictions complained of in the petition shall have authority to issue writs of habeas corpus.

heard where the record lies, or in a court that has the authority to bring the record before it" – the Alexandria Court – and that she has no other adequate remedy. We disagree.

A writ of "[p]rohibition is an extraordinary remedy issued by a superior court to prevent an inferior court from exercising jurisdiction over matters not within its cognizance where damage or injustice is likely to follow from such action." *King v. Hening*, 203 Va. 582, 585, 125 S.E.2d 827, 829 (1962); *see generally* Code §§ 8.01-644 and -645. "It is a remedy provided by the common law to redress the grievance growing out of an encroachment of jurisdiction," and issues "properly out of a superior court to an inferior court, commanding them to cease from the prosecution of a suit, upon a suggestion that either the cause originally, or some collateral matter arising therein, does not belong to that jurisdiction, but to the cognizance of some other court." *James v. Stokes*, 77 Va. 225, 229 (1883).

"Prohibition does not lie to compel a change of venue or prevent the circuit court from proceeding with the trial on the ground it was not instituted in the proper forum." *Tazewell Cnty. Sch. Bd. v. Snead*, 198 Va. 100, 107, 92 S.E.2d 497, 503 (1956). Additionally, "the writ is never allowed to usurp the functions of a writ of error, and can never be employed as a process for the correction of errors of inferior tribunals." *Supervisors of Bedford v. Wingfield,* 68 Va. (27 Gratt.) 329, 334 (1876). Finally, "before it can be granted, it must appear that the party aggrieved has no remedy in the inferior tribunals. . . . and it is always a sufficient reason for withholding the writ, that the party aggrieved has another and complete remedy at law." *Id*. at 333-34.

The decision to award such a writ "is one of sound judicial discretion, to be [made] according to the circumstances of each particular case. And being a prerogative writ, it is to be used . . . with great caution and forbearance, for the furtherance of justice." *Id.* at 333. However, "[t]he power of this court to award writs of prohibition . . . will always be

6

exercised . . . when the proper case is made by the pleadings and evidence." *Id.*

Thus, we must determine whether the Dinwiddie Court would act in excess of its jurisdiction by hearing Murphy's habeas petition, and whether the Director has other remedies.

"Jurisdiction is the power to adjudicate a case upon the merits and dispose of it as justice may require. In order for a court to have the power to adjudicate a particular case upon the merits, *i.e.*, to have active jurisdiction, several elements are needed." *Board of Supervisors v. Board of Zoning Appeals*, 271 Va. 336, 343, 626 S.E.2d 374, 378-79 (2006) (internal alterations, quotation marks and citations omitted). As is relevant here, "[t]hose elements are subject matter jurisdiction, which is the authority granted through constitution or statute to adjudicate a class of cases or controversies [and] territorial jurisdiction, that is authority over persons, things, or occurrences located in a defined geographic area." *Id.* at 343-44, 626 S.E.2d at 379 (internal quotation marks omitted). In the context of habeas corpus proceedings, the concept of "territorial jurisdiction . . . means venue." *Snead*, 198 Va. at 106-07, 92 S.E.2d at 502-03.

Article 3 of Chapter 25 of Title 8.01 of the Code of Virginia establishes circuit courts' subject matter jurisdiction for writs of habeas corpus. When construing statutes,

> the constant endeavor of the courts is to ascertain and give effect to the intention of the legislature, [and] that intention must be gathered from the words used, unless a literal construction would involve a manifest absurdity. Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed.

*Watkins v. Hall*, 161 Va. 924, 930, 172 S.E. 445, 447 (1934). "We must also assume that the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words as we interpret the statute." *Barr v. Town & Country Props., Inc.*, 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990).

7

Generally, any circuit court has subject matter jurisdiction to hear a petition for a writ of habeas corpus: "The writ of habeas corpus ad subjiciendum shall be granted forthwith by the Supreme Court or *any circuit court*, to any person who shall apply for the same by petition, showing by affidavits or other evidence probable cause to believe that he is detained without lawful authority." Code § 8.01-654(A)(1) (emphasis added).

However, there are two limits upon such jurisdiction. First, Code § 8.01-654(B)(1) provides that when a petitioner complains of a conviction order, only the court that entered that particular order has jurisdiction to issue a writ:

> With respect to any such petition filed by a petitioner held under criminal process, and subject to the provisions of subsection C of this section and of § 17.1-310 [which pertain to petitioners held under the sentence of death], *only the circuit court which entered the original judgment order of conviction or convictions complained of in the petition shall have authority to issue writs of habeas corpus.*

(Emphasis added.)[6]

Second, Code § 8.01-657 provides that generally, a writ is returnable "before the court ordering the same, or *any other of such courts*," but "in the event the allegations of illegality of the petitioner's detention present a case for the determination of unrecorded matters of fact relating to any previous judicial proceeding, such writ shall be made returnable *before the court in which such judicial proceeding occurred*." (Emphases added.)

_____

[6] Code § 8.01-654(A)(2) reinforces the distinction between petitions challenging "a criminal conviction or sentence" and those challenging other forms of detention by providing different statutes of limitation for the two:

> A petition for writ of habeas corpus ad subjiciendum, other than a petition challenging a criminal conviction or sentence, shall be brought within one year after the cause of action accrues. A habeas corpus petition attacking a criminal conviction or sentence . . . shall be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later.

8

Here, Murphy's petition complains of detention under the Alexandria Court's finding as to Code § 19.2-169.3(F), not a detention pursuant to a conviction order entered by it, therefore subsection (B)(1) does not apply to create sole jurisdiction in the Alexandria Court. Additionally, the parties agree that there is no need for "determination of unrecorded matters related to any previous judicial proceeding," and thus Code § 8.01-657 does not apply to limit jurisdiction to the Alexandria Court in which the commitment reviews have been held. Thus, the statutory scheme governing habeas corpus jurisdiction does not prohibit the Dinwiddie Court from hearing Murphy's petition.

Additionally, a "refusal to award a writ of prohibition does not deprive the litigants of a trial of the controversy on its merits." *Snead*, 198 Va. at 107, 92 S.E.2d at 503. The Director will have the opportunity to challenge any remedy awarded by the Dinwiddie Court on appeal to this Court.

Therefore, because the Dinwiddie Court has jurisdiction over the subject matter of the controversy and the Director has alternative remedies, we refuse her request for a writ of prohibition.

*Writ of prohibition denied.*